## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

_____

**BRITTANY E. MARTIN,**

                Plaintiff,        Case No.: 1:24-cv-00072

v.                                      HON. Hala Y. Jarbou

**HENN LESPERANCE PLC,**
**KEVIN LESPERANCE,**
**MALGORZATA ("GOSIA") WALKER,**
**ROY H. JOHNSON,**
**DOES 1-5,**

                Defendants.

---

### PLAINTIFF'S REPLY BRIEF TO DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S APPEAL OF MAGISTRATE JUDGE'S ORDER

Plaintiff, Ms. Brittany E. Martin, submits her Reply to Defendants' Response in Opposition to her Appeal of Magistrate Judge's Order. For the reasons stated below, Defendants' arguments are unfounded and should be rejected and Ms. Martin's appeal should be granted.

### INTRODUCTION

Defendants persist in their desperate tactics of attacking Ms. Martin's character to deflect from their own egregious conduct. Their strategy has always been clear: discredit the victim, deflect accountability, and bury the truth under a mountain of lies. By attempting to paint Ms. Martin as the villain, they hope to silence her, discredit her, and shield themselves from the consequences of their horrific actions.

Ms. Martin relies on her Appeal and objections (ECF No. 27) as Defendants' raise no legitimate argument in opposition, but will point out that Defendants' assertion that "the Court

ordered Plaintiff to file **any** amendment by February 29, 2024," is misleading, because the word "**any**" does not exist in the language of the stipulation.

The actual language of the stipulation reads: "Defendants stipulate that Plaintiff shall have until February 29, 2024, to file and serve an amended complaint as a matter of course pursuant to Fed. R. Civ. P. (15)(a)(1)(A) in this matter." ECF No. 12, PageID.57.

## I. Defendants' case law is inapposite because it contains no factual, procedural, or legal similarities to the posture of this case.

It is true that District courts have "inherent power to manage their dockets. *See Link* v. *Wabash R. Co*., 370 U.S. 626, 629–30, 82 S.Ct. 1386, 1388, 8 L.Ed.2d 734 (1962). That power, however, must be exercised in a manner that is in harmony with the Federal Rules of Civil Procedure. *See Hanna v. Plumer*, 380 U.S. 460, 471, 85 S.Ct. 1136, 1144, 14 L.Ed.2d 8 (1965)." *In re NLO, Inc.*, 5 F.3d 154, 157 (6th Cir. 1993).

Yet it is well established that the inherent power is not "absolute". *See Thomas v. Arn*, 474 U.S. 140, 148 (1985) "Even a sensible and efficient use of the supervisory power, however, is invalid if it conflicts with constitutional or statutory provisions."

"Reliance on the pure inherent authority of the court is equally misplaced … [T]here are obvious dangers in too broad an interpretation of the federal courts' inherent power to regulate their procedure. One danger is that it encourages judicial high-handedness ("power corrupts"); … The broader concern illustrated by the Brock episode is that in their zeal to settle cases judges may ignore the value of other people's time. *G. Heileman Brewing Co. v. Joseph Oat Corp.*, 871 F.2d 648, 657 (7th Cir.1989) (Posner, J., dissenting)." *In re NLO, Inc.*, at 158.

Defendants further argue that "a district court has discretion whether to allow a party to amend its complaint" and claim "there is no good cause to allow Plaintiff to amend now."

However, this Appeal does not concern whether the Court should grant Plaintiff leave to amend her complaint. Plaintiff did not require the Court's permission to amend her complaint as a matter of course.

Even if this Appeal was centered on whether a district court should allow a party leave to amend its complaint, Defendants' reliance on *Shane v. Bunzl Distrib. USA, Inc.,* 275 Fed. Appx. 535 (6th Cir. 2008) would still be misplaced, for the same reason this Court granted a plaintiff's Motion for Leave to Amend Complaint in *McCollum v. Bahl*, No. 1:08-CV-96, 2009 WL 10725544, at *3 (W.D. Mich. July 8, 2009), finding that "Defendants' reliance on *Shane v. Bunzl Distribution USA, Inc.*, 275 F. App'x 535 (6th Cir. 2008), is misplaced, because the court's discussion in that case was premised upon the plaintiff's failure to satisfy Rule 16(b)(4)'s "good cause" requirement. *See id.* at 536 ("Once a pleading deadline has passed, litigants must meet the higher threshold for modifying a scheduling order found in Rule 16(b)."). Rather, the applicable standard is Rule 15(a)(2), which provides that 'a party may amend its pleading only with the opposing party's written consent or the court's leave,' but '[t]he court should freely give leave when justice so requires.' Fed. R. Civ. P. 15(a)(2)." *Id.*

There are no parallels between this case and *Shane.* The court in *Shane* held that the plaintiff failed to meet the heightened threshold for meeting "good cause" under Rule 16(b) to modify a scheduling order (after the discovery and pleading deadlines had passed) to be granted leave to amend where the Plaintiff (1) knew of the facts underlying his motion to amend the complaint for "at least six years prior to his motion" and (2) could have sought leave to plead before the expiration of the deadline set in the court's scheduling order. *Id.* at 535.

II. **Defendants' proffer a deluge of untenable arguments that Magistrate Judge Berens' Order should be affirmed on various alternative grounds.**

Defendants have improperly introduced new assertions, arguments, and materials designed to mislead the Court. They accuse Ms. Martin of using the legal system as a platform to harass and embarrass various parties, and to publicly air grievances and irrelevant scandalous matters. This attempt to discredit her is not only procedurally improper but also fundamentally flawed.

Ironically, many of Defendants' arguments and the evidence they present actually reinforce the validity of Ms. Martin's claims and allegations in her complaint.

### III. Defendants falsely quoted Ms. Martin and deliberately misrepresented her statements to mislead the Court and support bad faith arguments.

Defendants watched a video on Ms. Martin's YouTube Channel then blatantly falsified *quoted* statements from Ms. Martin to mislead the Court and support their baseless argument that Ms. Martin is using the legal system as a "soapbox" to harass and embarrass various parties and "to publicly air her grievances and irrelevant scandalous matters".

Despite the availability of clear video evidence with captions (https://www.youtube.com/watch?v=dtuB70d9Zfo) Defendants falsely *quoted* Ms. Martin as saying:

"I am doing this if nothing else to have the truth and my story and all of this on the record…on the books permanent, you know forever public record and…I've been able to do that now and for that I am proud of myself." ECF No. 39, PageID.1335.

In reality, Ms. Martin's actual statement was:

"I know I can't keep up—um—on my own with, you know, they have endless resources, I don't have any. *So this is, you know, a real Hail Mary in the sense of winning, right, but you know, i if* if nothing else, to have the truth and my story and all of this on the record—um—on

the books, permanent, you know, forever public um record, I've *at least* um been able to do that now, and for that, I am proud of myself."

1. Defendants <u>fabricated and added</u> the words "*I am doing this*" in the quote.
2. Defendants conspicuously <u>omitted</u> the words *"at least"* from the quote, without signaling their omission.

Defendants' additions and omissions significantly change the meaning and context of Ms. Martin's statements. Defendants' selective and altered quotations distort Ms. Martin's true intent and context, which was about finding the silver lining in her David vs. Goliath battle.

The actual video from which Defendants cherry-picked their quotes supports the truth in a clear and genuine context.

In the video, dated January 31, 2024, Ms. Martin provides an update on her legal battle, sharing the significant step she had taken by filing her first lawsuit "in connection with the dystopian nightmare that [she's] been dealing with." She explains that this lawsuit addresses everything that went down with her former employer, the law firm Henn Lesperance PLC and her wrongful termination.

Ms. Martin explains that her initial complaint was rushed to meet the filing deadline and that she plans to file an amended complaint because her complaint is "not up to par, it's not where [she] need[s] it to be or want[s] it to be."

She literally emphasizes that the merits of her case are strong and based on solid claims, but the significant challenges she faces as a pro se litigant against a powerful law firm are immense.

Ms. Martin is realistic about the low probability of winning due to these obstacles but is determined to pursue the case. She is prepared for Defendants' aggressive litigation tactics and acknowledges the likelihood of being overwhelmed by their strategies. She concludes by

expressing her resolve to give her best effort to the case, despite not expecting to prevail in the traditional sense, and takes pride in having taken this significant step, giving herself credit for *if nothing else, at least* having her story and truth on court record, showcasing her resolve to seek justice despite the slim chances of success.

Defendants' tactics are aimed at undermining Plaintiff's credibility and distracting from the merits of her claims. The Court should see these tactics for what they are—an attempt to mislead and manipulate the judicial process.

**IV.** **Defendants are improperly and prejudicially using their Response in Opposition to Plaintiff's Appeal of Magistrate Judge's Order as a mouthpiece to advance dispositive arguments on substantive merits of the case and seeking extreme and excessive relief from the Court.**

Defendants are misusing their Response in Opposition to transform their opposition into de facto dispositive motion(s) seeking extraordinary and unwarranted relief in an attempt to sidestep the procedural safeguards that ensure fair play in litigation. By doing so, they are effectively denying Plaintiff her right to (1) a fair hearing on her appeal by overwhelming Plaintiff with procedural and substantive arguments that are not relevant to the current stage of the proceedings, and (2) fair notice and proper opportunity to address and respond meaningfully.

The proper procedure for raising arguments related to pleading standards, futility of amendments, or any substantive issues concerning the merits of the case is through motions specifically designed for such purposes. Defendants' attempt to shoehorn these arguments into their response in opposition to an appeal of a Magistrate Judge's non dispositive procedural order seeking extreme and excessive relief is a blatant misuse of the procedural rules. It is also highly prejudicial to Plaintiff because she has had no opportunity to present arguments concerning

pleading standards or the substantive merits of her claims because these issues were not addressed in the Order being appealed.

Indeed, Magistrate Judge Berens' sua sponte Order did not make any factual or legal findings concerning the merits of the case, pleading standards, futility of amendments, sanctionable conduct. The Order solely addressed specific procedural aspects of Rule 15(a), and by court rule, Plaintiff's Appeal and objections to that Order were limited to the scope of Magistrate Judge Berens' legal or factual findings.

This approach is not only procedurally improper but also undermines the integrity of the judicial process. The Court should reject Defendants' arguments on these grounds and focus solely on the issues pertinent to the appeal of Magistrate Judge Berens' Order.

V. **Defendants' desperate pleas for the Court to strike Ms. Martin's pleadings speaks volumes.**

Defendants are determined to silence Ms. Martin and obstruct her pursuit of justice. Their plea to the Court to bar her from filing any amendments before the Court rules on their motion to dismiss is a transparent attempt to silence her and stifle her pursuit of justice. This tactic confirms Ms. Martin's claims of systematic retaliation and oppression.

Defendants argue that Ms. Martin's Amended Complaint is intended to harass and contains irrelevant, impertinent, and scandalous allegations and exhibits plea that the Court strike all of it, sua sponte, on their word. This claim is nothing more than a panicked and desperate attempt to hide their own egregious actions. Ms. Martin is simply telling the true story of what Defendants did to her. Plaintiff's allegations are honest, relevant to the case and claims, and substantiated by evidence. The fact that these allegations are "scandalous and harassing" is a reflection of the Defendants' own actions. Plaintiff's Amended Complaint aims to tell her story accurately and

truthfully, which includes the horrific conduct of the Defendants. The facts and narratives are highly relevant to not only properly establishing Plaintiff's claims but also to understanding the full context of Plaintiff's claims and cannot be dismissed simply because it exposes Defendants' misconduct.

Defendants' assertion that "Ms. Martin wrote her pleadings with Grace Lesperance" is incorrect. Ms. Martin contacted Ms. Lesperance to inform her of the lawsuit, as a heads up. Subsequently, Ms. Martin showed Ms. Lesperance minimal portions of her draft Amended Complaint, which Ms. Lesperance briefly reviewed and edited. As proven in Defendants' exhibit, Ms. Martin ultimately chose *not* to incorporate Ms. Lesperance's suggestions, as they were "too narrowly focused on Defendant Gosia Walker's conduct".

Furthermore, the exhibit provided by Defendants is a screenshot of two paragraphs of a Microsoft Word document. This exhibit does not substantiate their claim, as it shows minimal (literally, one sentence) and ultimately unused input from Ms. Lesperance. The fact that these edits are not included in the final complaint is a matter of record.

The allegation that Grace Lesperance significantly contributed to the drafting of the pleadings is both implausible and irrelevant. Grace Lesperance lacks the knowledge of the events and the employment law expertise necessary to meaningfully contribute to the drafting process.

## VI. Defendants' request that the Court require any future or further amendments under seal is an unnecessary and excessive measure aimed at further obstructing Plaintiff's access to justice and shield their crimes and abhorrent misconduct from seeing sunlight

Defendants' have also requested that the Court preemptively require any future or further amended complaint filed by Plaintiff to be filed under seal. It is yet another desperate and excessive

measure aimed at silencing Plaintiff and obstructing her access to justice. Transparency in legal proceedings is crucial for ensuring fairness and accountability.

Moreover, Defendants' reliance on *Stinnett v. Brooks Kushman, P.C.*, 2011 WL 672230 (E.D. Mich. Feb. 17, 2011), is misplaced. In *Stinnett*, Defendants filed an Ex Parte Motion and Brief in Support of Motion for Protective Order, to Strike and to Seal Court Record. The court, with the agreement of both parties, set a hearing date on the Defendants' motion. The hearing was held in open Court. The Court received briefing and heard arguments on the relevant Sixth Circuit decisions on public proceedings/pleadings. Ultimately, the court granted in part and denied in part Defendants' requests to strike specific portions holding that "Defendants had established a showing of substantial personal and financial harm as to the stricken portions of the Complaint."

In contrast, Defendants' did **not** file a motion to strike and/or seal, there has been no hearing requested, agreed to, scheduled, nor held—let alone in open court—the court has **not** received briefing and heard arguments on the relevant Sixth Circuit decisions on public proceedings/pleadings. Furthermore, Ms. Martin's Amended Complaint is directly relevant to her claims and accurately recounts her experiences and Defendants' actions. The allegations are not improper or irrelevant; rather, they are necessary to provide a full and truthful account of the events in question and plead necessary facts to establish her claims.

Defendants' attempt to categorize Plaintiff's allegations as irrelevant and scandalous is merely an effort to shield their own misconduct from scrutiny. The content of Plaintiff's Amended Complaint is pertinent to her claims and essential to properly plead the elements of her claims and for the Court's understanding of the context and gravity of the Defendants' actions.

**VII.** **Tom Walker was directly and intimately involved in the crimes committed against Ms. Martin.**

Defendants attempt to characterize Plaintiff's naming of Tom Walker as a defendant in her Amended Complaint as further harassment towards Gosia Walker. This could not be further from the truth. Tom Walker was directly and intimately involved in the crimes committed against Ms. Martin.

In January 2021, Ms. Martin was abruptly and unjustly terminated from her position as a legal assistant/paralegal at Henn Lesperance PLC. Five days prior to her firing, an anonymous package containing a letter and incriminating photographs was received by Ms. Grace Lesperance, the wife of Defendant Kevin Lesperance. The letter, purportedly from a private investigator, exposed an extramarital affair between Kevin Lesperance and his subordinate, Defendant Gosia Walker. Although the letter did not identify its sender beyond claiming to be from a private investigator acting out of altruism, Ms. Martin was falsely framed by Defendants, particularly Gosia Walker, as the author and sender.

Ms. Martin had no knowledge of Kevin and Gosia's affair and no involvement in the letter. In reality, the author was Gosia Walker's husband, Thomas C. Walker. With Gosia's complicity, they orchestrated this malicious act to frame Ms. Martin, thereby sabotaging her career and reputation. Ms. Martin has since been subjected to a vicious, retaliatory smear campaign.

Notably, Defendants are well aware of this. During a phone conversation, Defendants' counsel asked Plaintiff who she thought wrote "the letter". Plaintiff responded that it was authored by Grand Valley State University Professor Thomas C. Walker, Gosia Walker's husband, 30 years her elder. Plaintiff noted she had literally witnessed Thomas C. Walker standing in the firm's parking lot taking photographs that were included in the letter. Plaintiff confirmed she shared this information with Mr. Cascini during the January 29, 2021 phone conversation that Mr. Cascini secretly recorded and refuses to produce to Plaintiff, where Mr. Cascini was exploiting Plaintiff's

trust for him and attempting to coerce Plaintiff into signing the "severance package/separation agreement/release of all claims". ECF No. 27, PageID.1275

Defendants attempt to obscure Tom Walker's involvement because he is a significant figure with considerable influence. His direct actions and complicity in framing Ms. Martin are critical to the case. Defendants' efforts to exclude him from the lawsuit are intentional and aimed at shielding him from accountability.

**VIII. Defendants assert that "the vast majority of the allegations contained in Plaintiff's Amended Complaint are impertinent, immaterial, and scandalous. For example, the proposed Amended Complaint contains irrelevant"**

- Defendants argue that the Amended Complaint improperly includes: "Dozens of irrelevant text messages, many of which contain derogatory, harassing, and scandalous comments and accusations about numerous nonparties. (See, e.g. Id. at PageID.273 – 279).

However, Defendants' statement is false and misleading and fails to acknowledge the context and significance of the communications they specifically cite to.

These messages are admissible and pertinent because they are messages from Defendant HR/Office Manager Gosia Walker, operating under the anonymous alias "HannahTreeClimber" on Instagram. HR/Office Manager Gosia Walker used this fake identity to sexually harass, intimidate, stalk, defraud, and retaliate against Ms. Martin.

On or about December 11, 2021, Ms. Martin received an unsolicited message from an Instagram account named "Hann, @HannahTreeClimber." Subsequent investigations revealed that the individual behind this account was Gosia Walker, the HR/Office manager at Henn Lesperance PLC. Evidence includes text messages of direct admissions by Gosia Walker of being the imposter and her stated goals and the attachment of her phone number and email to the Instagram account.

In a nearly three-hour recorded meeting on December 9, 2022, involving Gosia Walker, Ms. Martin, and Mr. David Sparks, Gosia Walker literally admitted to being "HannahTreeClimber." Gosia Walker also stated that Ms. Martin was wrongfully terminated and scapegoated, and that Defendant Kevin Lesperance had a vendetta against Ms. Martin, aiming to destroy her career.

Gosia Walker dedicated substantial portions of her workdays at the firm to managing multiple fake online identities, including sending hundreds of messages to Ms. Martin from her fictitious Instagram account "@HannahTreeClimber." Many of these messages were sent during regular business hours while Walker was "on the clock." Indeed, these text messages *from Defendant Gosia Walker* defaming, insulting, and vilifying her colleagues, coworkers and her Co-Defendants with whom she now presents a united front in this litigation, and further illustrating the discriminatory, hostile, and retaliatory work environment Ms. Martin was subjected to.

The inclusion of these communications in the Amended Complaint is not irrelevant or scandalous but is essential to providing a full and accurate account of Defendants' misconduct and asserting facts to properly plead the required elements of Ms. Martin's claims. Defendants' attempt to dismiss these messages as irrelevant and scandalous is an effort to minimize and obscure their own wrongful actions.

Plaintiff could and would go into detail debunking each of Defendants' examples if she had more time.

- Defendants argue that the Amended Complaint improperly includes "details of protected health information that Plaintiff alleges had been improperly disclosed, but that she chooses to insert into her complaint for no valid reason. (Id. at PageID350-351)"

In reality, Plaintiff included these details to highlight the gross misconduct of Defendant HR Office Manager Gosia Walker, who routinely used her high-level position to degrade and

expose confidential private health information of employees through word of mouth and documented text messages, violating HIPAA.

For example, Ms. Martin provided specific instances where HR/Office Manager Gosia Walker exposed and ridiculed employees' accommodation requests and personal health issues to other employees. This behavior not only violated privacy laws but also created a toxic and discriminatory workplace environment, making it extremely risky and uncomfortable for Ms. Martin and others to request accommodations. The inclusion of these details in the Amended Complaint is necessary to demonstrate the Defendants' unlawful HR/management practices and the hostile work environment they fostered.

Defendants' complaints about the inclusion of these text messages are unfounded. These messages are Gosia Walker's own words, sent during her employment and reflecting her continuous, relentless violations of employee privacy. Plaintiff's inclusion of this information is critical to understanding the full extent of the Defendants' misconduct and the detrimental impact it had on her and other employees.

- Irrelevant and scandalous allegations against a non-party attorney. For example, Plaintiff alleges that a local attorney's "interests and hobbies are 'Asians and strippers'" and that the attorney allegedly "has incriminating dirt and blackmail on several high-profile attorneys in the Grand Rapids area." (ECF No. 17, PageID.404, ¶¶786-787). These allegations have no connection to Plaintiff's claims, but are instead intended to injure personal reputations.

This is untrue and—similar to the way Defendants try to minimize and dismiss Tom Walker's direct involvement and relevance to the claims—is an attempt to cover for Todd Stuart. Indeed, Todd Stuart, allegations involving Todd Stuart, including his proclivities are absolutely connected and highly relevant to Ms. Martin's claims.

**IX. Defendants' argue that their pending Motion to Dismiss "should be decided before Plaintiff files an amended complaint, if even warranted, in the interest of judicial**

**efficiency because the stricken Amended Complaint raises nearly identical claims as Plaintiff's original Complaint."**

This is not true. But Ms. Martin encourages Defendants' to rely on their pending Motion to Dismiss in response to Plaintiff's First Amended Complaint to test their theory.

To name only a few significant revisions:

- Claims for Violations of Computer Fraud and Abuse Act 18 U.S.C. § 1030
- Expanded and cleaned up claims under FLSA, Title VII, ADA, and companion state laws
- New Breach of Contract
- New Negligent Retention and Supervision
- New Conversion
- Tortious Interference
- Invasion of Privacy
- Conspiracy

Ms. Martin can only speculate as to why Defendants would make such an outlandish and demonstrably false claim, but perhaps it is in an attempt to further manipulate and mislead and dissuade the Court from a thorough and careful review of Plaintiff's Amended Complaint. would show that although there is *a lot* of room for improvement, it is legitimate and viable. Admittingly,

> "Despite her best efforts to refine and finalize the Complaint within the available timeframe, some errors remain. Ms. Martin acknowledges these imperfections and is ready and willing to amend the Complaint as needed to correct these errors." (ECF 17, PageID.248).

## X. Defendants' weaponization and distortion of rigged legal proceedings involving malicious PPOs

Defendants argue that Plaintiff's limited experience as a legal assistant/paralegal, combined with having no choice but to defend herself in state court personal protection order (PPO) proceedings initiated by Defendants' accomplices, Ally VanOrden and Jayme Brizzolara justifies holding her to a higher standard than other pro se litigants. This argument is absurd.

Defendants' suggestion that Ms. Martin's experience in Kangaroo Court PPO proceedings and background as a legal assistant/paralegal mean she should have flawlessly navigated the legal system is disingenuous. Ms. Martin has faced relentless obstruction from Defendants, whose extensive resources, seedy connections, and unethical behavior have created an uneven playing field. The systemic bias and corruption she has encountered would challenge even the most seasoned attorney, let alone a self-represented individual.

Defendants have weaponized the existence of the PPO proceedings, using them as a tool to silence and intimidate Ms. Martin since before her termination. Despite Defendants' knowingly false characterization of the PPOs as "irrelevant" and patronizing Ms. Martin for what they describe as an "attempt to collaterally attack various Personal Protection Orders," it is *Defendants*, not Ms. Martin, who have chosen to introduce and distort the Personal Protection Order (PPO) proceedings, in malicious attempts to paint Ms. Martin in a negative light. By doing so, Defendants have opened the door to scrutiny of these proceedings and the corrupt actions associated with them.

Defendants' argument is an attempt to exploit Ms. Martin's vulnerable position and to divert attention from their own misconduct. Their attempts to paint Ms. Martin as a vexatious litigant are not only baseless but also serve to highlight their unethical strategies. The Court should see through these tactics and recognize the true nature of the Defendants' actions.

## <u>CONCLUSION AND RELIEF REQUESTED</u>

For the foregoing reasons, Defendants' deceptive tactics, falsehoods, and deliberate misrepresentations should not be allowed to influence this Honorable Court and their unfounded arguments should be rejected.

**WHEREFORE,** Ms. Brittany E. Martin respectfully requests this Honorable Court grant her Appeal of Magistrate Judge Berens' Order and any such other and further relief the Court deems just and proper.

Respectfully submitted,

Brittany E. Martin
*Plaintiff in Pro Se*

Dated: May 22, 2024             By:  /s/ Brittany E. Martin
                                     **Brittany E. Martin, *in Pro Se***
                                     23 College Ave. SE, APT. 18
                                     Grand Rapids, MI 49503
                                     (616) 822-9423
                                     bmartin0211@outlook.com

_____

**BRITTANY E. MARTIN,**

                    Plaintiff,

v.

**HENN LESPERANCE PLC., *et al.,***

                    Defendants.

Case No.: 1:24-cv-00072
HON. Hala Y. Jarbou

_____

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.3(b)(i)

This Brief complies with the word count limit of W.D. Mich. LCivR 7.3(b)(i). This brief was written using Microsoft Word Office 365 and has a word count of 4,272 words.

                    Respectfully submitted,


                    Brittany E. Martin
                    *Plaintiff in Pro Se*


Dated:   May 22, 2024            By:   /s/ Brittany E. Martin
                                **Brittany E. Martin, *in Pro Se***
                                23 College Ave. SE, APT. 18
                                Grand Rapids, MI 49503
                                (616) 822-9423
                                bmartin0211@outlook.com