# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**BRITTANY E. MARTIN,**

Plaintiff,

v.

**HENN LESPERANCE PLC., *et al.,***

Defendants.

Case No.: 1:24-cv-00072

HON. Hala Y. Jarbou

**PLAINTIFF'S REPLY IN SUPPORT OF HER MOTION FOR ISSUANCE OF SUMMONS AND SERVICE OF PROCESS TO NEW DEFENDANTS THOMAS C. WALKER, WILLIAM HENN, AND ANDREW CASCINI**

Plaintiff, Ms. Brittany E. Martin, submits her Reply in further support of her Motion for Issuance of Summons and Service of Process to New Defendants Thomas C. Walker, William Henn, and Andrew Cascini (The "Motion", ECF No. 68).

## INTRODUCTION

### I. Defendants are using delay tactics to protect the unrepresented New Defendants and avoid ethical conflicts.

The original defendants—Henn Lesperance, PLC, Kevin Lesperance, Gosia Walker, and Roy H. Johnson—are all represented by Butzel Long, presenting a united front and coordinated defense strategy.

Ms. Martin added Thomas C. Walker, William Henn, and Andrew Cascini as New Defendants through her First Amended Complaint. Officially issuing and serving summons on Tom Walker, Henn, and Cascini will require them to respond to the complaint and formally retain legal counsel.

Integrating Henn and Cascini into the existing defense coalition under Butzel Long is straightforward due to their overt involvement with Henn Lesperance PLC ("the Firm").

The introduction of Tom Walker, however, forces Defendants and their counsel into a precarious position. Tom Walker's interests do not align with the interests of the other Defendants, making joint representation both ethically risky and strategically untenable.

The original Defendants must now choose between two problematic options:

**Option One: Represent Tom Walker Alongside the Other Defendants Under Butzel Long**

**Problem: The Michigan Rules of Professional Conduct ("MRPC") prohibit lawyers from representing clients with conflicting interests without informed consent, which is not feasible here due to the diverging interests and stakes involved.**

This choice risks serious ethical violations. Representing multiple parties with overlapping but divergent interests complicates defense counsel's ability to provide unbiased and effective representation in adherence with the MRPC. The conflicting interests between Tom Walker and the other Defendants make it impossible for the same lawyer to represent them all without breaching ethical rules.

For example, Tom Walker's relationship with his partner, Defendant Gosia Walker, and their understated involvement with the Firm, is the foundation of Tom Walker's significant but hidden role in the Firm's operations. Although his influence is not openly admitted, evidence points to Tom Walker having considerable control over the firm's dealings. Tom Walker's defense strategy might be to downplay any indication of control or leverage over the firm to shield himself from exposure and liability, which would conflict with the other Defendants' strategy, which may be to deflect blame by highlighting the external pressure and influence from Tom Walker to try to justify their actions.

**<u>Option Two</u>: Abandon Thomas C. Walker and Force Him to Seek Separate Legal Counsel**

**Problem: Forcing Tom Walker to seek his own legal representation due to his diverging interests from those of the other Defendants directly contradicts Defendants' false narrative which portrays Tom Walker as a completely uninvolved outsider.**

Conversely, abandoning Tom Walker and forcing him to secure his own separate legal counsel while remaining counsel of record for *all other* Defendants in this lawsuit (including Tom Walker's partner, Gosia Walker), shatters Defendants' narrative.

Defendants have already falsely branded Tom Walker as a mere peripheral figure, downplaying his authoritative role in the actions and decisions being litigated. ("Mr. Walker is a nonparty to this lawsuit, has never been associated with Henn Lesperance PLC, and has never been an employee or agent of any Defendants." (ECF No. 39, PageID.1347) claiming that "Plaintiff simply added Mr. Walker as defendant in her amended complaint to further harass Defendant Gosia Walker." *Id*.).

In reality, Tom Walker plays a significant and influential role in the operations and decision-making of the actions giving rise to this lawsuit.

If Tom Walker is forced to get his own lawyer, it directly contradicts Defendants' narrative and underscores that Tom Walker's interests are not aligned with those of the other Defendants, lending credibility to Ms. Martin's claims of Tom Walker's deeper involvement in the misconduct and the broader sinister ties she alleges. If he were truly uninvolved, there would be no need for him to seek separate legal representation because there would be no conflicting or diverging interests. This act alone would affirm a deeper, significant involvement that aligns with Ms. Martin's claims.

**i. Defendants are in a no-win situation.**

In either scenario, Defendants and their counsel are placed in a difficult position once Tom Walker, Bill Henn, and Andrew Cascini are officially served.

They must either take Tom Walker under their wing, forcing their legal counsel to manage conflicting loyalties, risking serious ethical violations, or risk undermining their own broader narrative by abandoning joint representation of Tom Walker and revealing his true involvement.

This dilemma is the actual reason Defendants seek to stay the inclusion of the new Defendants through formal summons and service, revealing the lengths to which Defendants are prepared to go to manipulate the legal process and avoid a fair and thorough examination of the claims against them.

Without any viable legal arguments but with a need to obscure their true motives, Defendants resort to frivolous procedural exploitation and ad hominem attacks against Ms. Martin. These arguments are not only baseless but also ironic given Defendants' own conduct throughout this litigation.

**RELEVANT FACTUAL BACKGROUND**

1. On June 3, 2024, at 2:32pm, Ms. Martin submitted completed proposed summonses to be issued for the New Defendants named in her First Amended Complaint. (ECF No. 67).

2. 27 minutes later, at 2:59pm, Ms. Martin received notice that her proposed summons had been rejected. (ECF No. 70, PageID.1581-1582).

3. Ms. Martin immediately researched the procedural requirements and remedies. Demonstrating her compliance with Local Rule 7.1(d), she drafted and sent a detailed email to Defendants' counsel at 5:50pm, explaining her basis and seeking their concurrence for issuance and service of the summons. (ECF No. 69-1, PageID.1579).

4. By June 4, 2024, at 11:15 AM, having not received any response from Defendants' counsel, Ms. Martin filed her Motion. (ECF No. 68).

5. That same afternoon, Ms. Martin received a call from Defendants' counsel. During their phone conversation, Defendants' counsel presented Ms. Martin with an ultimatum: Ms. Martin would need to either withdraw her Motion for Summons and agree to "stay that aspect of the case" or face their opposition. Ms. Martin declined, citing concerns about procedural due process and the prejudicial impact of delaying the summons issuance and service.

6. On June 13, 2024, Defendants filed their Response in Opposition. (ECF No. 72).

## ANALYSIS

In their Response, Defendants offer two arguments for why the Court should deny Ms. Martin's Motion and impose a stay. Both arguments are fundamentally flawed and based on misstatements of fact and law.

### I. Alleged Non-Compliance with Local Rule 7.1(d)(ii)

Defendants argue that Ms. Martin's Motion should be denied because she failed to comply with Local Rule 7.1(d)(ii). This assertion is false.

It is undisputed that Ms. Martin complied with Local Rule 7.1(d)(ii) by attempting to obtain concurrence from Defendants' counsel before filing her Motion. (ECF No. 69-1, PageID.1579).

Defendants' argument that Ms. Martin failed to comply with Local Rule 7.1(d) because she did not provide a reasonable opportunity to meet and confer before filing her Motion is both irrelevant and disingenuous.

Contrary to Defendants' claim in their Response that they were "reviewing Plaintiff's email and preparing for an anticipated phone conference with Plaintiff to discuss her request for

concurrence," (ECF No. 72, PageID.1591), Defendants were not preparing to engage in good faith or meaningful discussions.

Defendants' immediate opposition during the phone call on June 4, 2024, when they issued an ultimatum for Ms. Martin to withdraw her Motion and agree to the terms of their stay or face their opposition confirmed the truth: their opposition was not a result of insufficient engagement time but a predetermined decision to reject her motion, regardless of her efforts, demonstrating that making any further attempts to seek concurrence would have been futile.

Moreover, Defendants' own practices reveal their hypocrisy in accusing Ms. Martin of insufficient engagement time. Indeed, their email exchange on May 28, 2024, Defendants' counsel requested Ms. Martin's concurrence in their motion to strike and/or seal her proposed amended complaint, giving her a similar timeframe to respond:

> "Relatedly, we are writing to seek your concurrence in the motion to strike and/or seal your proposed amended complaint **that we intend to file tomorrow**." (ECF No. 48-1, PageID.1459).

Nonetheless, even if Ms. Martin had outright failed to seek concurrence or violated the rule, this Court and several other courts within the Sixth Circuit have consistently held that rigid adherence to the concurrence requirements would result in a waste of time and judicial resources, especially in situations where obtaining concurrence would be futile because the opposing party would not have concurred in the requested relief, and does not serve judicial economy or fairness. See *Plastic Omnium Auto Inergy Indus. SA de CV v. MCC Dev., Inc., No. 21-CV-11141, 2022 WL 883024, at 2–3 (E.D. Mich. Mar. 24, 2022)* (finding that an email requesting concurrence sent at **6:13 p.m., [after business hours] and only hours before the 8:55 p.m. filing** of a motion, was sufficient under Local Rule 7.1 noting that '**district courts in this jurisdiction have routinely waived these requirements when it is obvious that the opposing party would not have**

**concurred in the requested relief.**' *In re Kulek*, No. 18-11509, 2019 WL 168540, at *4 (E.D. Mich. Jan. 11, 2019)); (Declining to enforce the meet-and-confer rules when a party did not seek concurrence for a motion holding that "**enforcement of the rule under these circumstances would result in a waste of time and judicial resources**, **as it is abundantly clear that [Pagan] would not have concurred in the requested relief**." *Kim v. City of Ionia,* 2013 WL 3944267, at *3 n.6 (W.D. Mich. July 31, 2013); *see also Bourne v. Arruda,* 2011 WL 2357504, at *19 (D.N.H. June 10, 2011) ("**The nature of defendants' objection and their failure to show any willingness to concur in the relief requested makes it clear that [plaintiff's] failure to seek concurrence had no real impact on the litigation**."); *Berryman v. Hofbauer,* 161 F.R.D. 341, 343–44 (E.D. Mich. 1995): *2 '**[e]ven if defendants had not sought concurrence and had violated the rule**, ... **the Court would waive this requirement in this case as obviously plaintiff would not concur—and has not—in the relief requested. To deny the motion on this technical point would not serve the interests of judicial fairness and economy**[;]'" *In re Birmingham Cosm. Surgery, P.L.L.C.,* No. 14-58784, 2015 WL 1038801, at *1–2 (Bankr. E.D. Mich. Mar. 5, 2015).

Ms. Martin's efforts meet Local Rule 7.1's standards as the attempts to engage were reasonable, especially given the circumstances and previous interactions. See *Am. Communications Network, Inc. v. Steuben Associates,* 2005 WL 1355070, at *2 (E.D. Mich. April 5, 2005) ("[g]iven the past history of the dissension between the parties, any request would have been futile" and that **"[d]ismissal of the motion based on failure to request concurrence would elevate form over substance**.");

Additionally, Defendants have not, and cannot, show any prejudice or harm from the requested relief in Ms. Martin's motion, let alone not having more time to meet-and-confer over a motion they were always going to oppose. See *In re Kulek*, No. 18-11509, 2019 WL 168540, at

*4–5 (E.D. Mich. Jan. 11, 2019) (Holding that failure to seek concurrence does not require denial of a motion, a party's the argument that a motion was not properly before the court because opposing party did not seek concurrence under local court rule "**is a nonstarter. District courts in this jurisdiction have routinely waived these requirements when it is obvious that the opposing party would not have concurred in the requested relief.**" and rejecting the assertion that failure to seek concurrence requires denial of a motion, particularly when the opposing party could not demonstrate—and did not even allege—that movant's failure to seek concurrence harmed him in any way and "had provided no reason to believe that he would have concurred in the motion," emphasizing that "[T]o deny the motion on this technical point would 'not serve the interests of judicial fairness and economy.'") (internal citations omitted.)).

Even if Ms. Martin had not sought concurrence at all, the local rules do not mandate that the court deny the motion. See *Dykes v. Corizon, Inc.,* No. 2:22-CV-113, 2024 WL 2717390, at *4 (W.D. Mich. May 28, 2024) ("local rule 7.1(d) provides that the 'Court *may* impose sanctions..., which may include...denying the motion[.]' W.D. LCivR 7.1(d)(iii) (emphasis added). The local rules do not *mandate* denial.") (emphasis in original).

In contrast, the case law Defendants rely on is selectively quoted to conceal the deficiencies. They largely address discovery matters, complete failures to comply with procedural rules, none of which apply to Ms. Martin's documented efforts or relevant facts.

## II. Defendants' Mischaracterization of Ms. Martin's Conduct

Defendants devote a significant portion of their Response to allegations that Ms. Martin consistently fails and outright refuses to comply with Local Rule 7.1(d). These accusations are unfounded and particularly ironic given the Defendants' own conduct throughout this litigation.

**A. Defendants' accusation of Ms. Martin engaging in protracted motion practice holds no merit.**

Defendants assert that Ms. Martin is "engaging in protracted motion practice" (ECF No. 72, PageID.1591). This claim is misleading and contradictory. The necessity for Ms. Martin's motions primarily arises from the Defendants' actions, which include blanket refusal to concur with *any* of Ms. Martin's requests, regardless of their reasonableness and their lack of prejudice to Defendants and to address and correct demonstrably false assertions routinely made by the Defendants in their filings. These actions are necessary for Ms. Martin to protect her procedural rights and to maintain the integrity and accuracy of the case record.

**B. Defendants' false representations in their Motion to Strike and Seal**

Defendants' most recent motion to strike and seal Ms. Martin's amended complaint (ECF No. 73) is a glaring example of their bad faith and manipulative conduct in this case. Despite prior agreements to collaboratively address the concerns raised in their motion, Defendants have displayed a clear disregard for judicial economy, procedural efficiency, and the local rules that require genuine meet-and-confer efforts.

**i. Background and Meet-and-Confer Efforts:**

On Tuesday, May 28, 2024, at 9:27 AM, Defendants' counsel communicated their intention to file a motion to strike and/or seal Ms. Martin's proposed amended complaint, seeking concurrence. Ms. Martin responded that she unequivocally opposed any motion to seal her amended complaint and requested clarification regarding the specifics of the motion to strike. She expressed a willingness to address certain redundant or non-essential elements voluntarily, including the removal of duplicate copies within the exhibits. For example, she noted:

> "I am open to voluntarily striking a few specific items. For instance (non-exhaustive), I forgot to pull the extra copies from some of the exhibits—off the top of my head I know Exhibit V has 3 extra copies of Grace's packaging/letter/photos. Striking those duplicates would cut 37 pages off." (**EXHIBIT A**)

During a follow-up meet-and-confer phone call on May 30, 2024, at 6:07 PM, Ms. Martin reiterated her openness to revising the amended complaint to address Defendants' concerns. In response, Defendants proposed to compile a list of specific items they wished to strike and/or seal and provide this list to Ms. Martin for her review before filing their motion to "see if we could land a plane." The aim was to reach a mutual agreement, narrowing the scope before seeking court intervention. Ms. Martin agreed to consider these requests and even granted Defendants a 21-day extension to facilitate this, resulting in the stipulated briefing schedule (ECF No. 63).

**ii. Defendants' Failure to Honor Prior Agreement:**

Contrary this agreement, Defendants used the extension, but proceeded to file the motion to strike and seal the amended complaint without engaging in any further discussions to refine and narrow down the issues. This action not only violates the spirit of the local meet-and-confer rules but also highlights Defendants' aversion to honest and cooperative negotiation.

**iii. Dishonest Representations in Defendants' Certificate of Concurrence:**

Defendants' "Certificate of Attempt to Obtain Concurrence" (ECF No. 76, PageID.1745) falsely represented Ms. Martin's position by stating:

> "Plaintiff indicated that she would not concur in the relief sought. Consequently, the parties stipulated to the briefing schedule set forth in ECF No. 55 for the briefing on Defendants' Motion to Strike and/or Seal." *Id.*

Defendants' certificate deliberately omits essential facts:

i. It fails to mention Ms. Martin's documented offer to voluntarily strike portions of her Amended Complaint and her continued efforts to address Defendants' concerns.

ii. It ignores her granting of a 21-day extension to facilitate the parties' agreement to streamline the issues prior to involving the Court.

Such omissions are not mere oversights but deliberate attempts to mislead the Court and paint Ms. Martin in an unjustly negative light.

### C. Defendants' distorted a routine filing error in further exploitation of Ms. Martin's recent family tragedy.

In another stark example of Defendants seeking to gain an unfair advantage by any means, Defendants attempt to grossly distort a routine filing error made by Ms. Martin during her first motion as a self-represented party. In the immediate aftermath of her aunt's sudden passing, she mistakenly included the certificate of concurrence in the same document as her brief in support of a motion for an extension of time. (*See* W.D. Mich. LCivR 7.1(d) requiring a *separately-filed* certificate of concurrence for non-dispositive motions). This nominal mistake was due to the urgency and emotional distress she was experiencing, exacerbated by Defendants' gamesmanship and refusal to agree or stipulate to a simple extension during this challenging time. (ECF No. 21, PageID.1248, ECF No. 21-1, PageID.1251-1258).

In response, the Court held her Motion in abeyance and allowed Ms. Martin five days to file a separate certificate of concurrence. (ECF No. 23, PageID.1265). This response is standard practice. This minor procedural mistake is common, even among seasoned attorneys, and often requires a simple correction without significant consequence.

Yet, Defendants have deliberately exaggerated this trivial mistake, attempting to cast Ms. Martin as procedurally incompetent and non-compliant. They have ignored the Court's typical response of allowing a quick and simple correction, instead using this minor issue to unfairly tarnish Ms. Martin's credibility and competence.

By distorting this routine error, Defendants have displayed a disturbing lack of empathy and professional decorum, choosing to exploit Ms. Martin's family tragedy to cast her in a negative light.

**D. Defendants' pattern of misrepresenting phone conversations.**

Defendants also have a history of distorting phone conversations and failing to honor the agreements made during these calls. On multiple occasions, Defendants have twisted the facts of these verbal exchanges, leading to misrepresentations that complicate the proceedings and mischaracterize Ms. Martin's actions and intentions.

For example, Defendants have falsely claimed that Ms. Martin agreed to specific terms or conditions during phone calls, which she did not. **(EXHIBIT B)**. These misrepresentations have been used to create a misleading narrative about her compliance and intentions.

## III. Hypocrisy in Defendants' Claims of Seeking Judicial Economy and Efficiency

Lastly, Defendants argue that the Court should deny Ms. Martin's motion "in the interest of judicial economy and efficiency." This argument is misleading. Defendants' own actions and requests to delay proceedings directly contribute to the protracted litigation they claim to oppose.

Indeed, this opposition itself is the epitome of unnecessary, protracted, and burdensome litigation. Defendants' main argument is that Ms. Martin's certification of concurrence was "insufficient". However, as this Court has emphasized, Local Rule 7.1(d) was not intended to exacerbate litigation by spawning additional motions based on assertions of non-compliance with the rule. The rule's purpose is to encourage good faith efforts to resolve disputes, not to create another layer of procedural contention. ("It is patent that Rule 7.1(d) **was not intended to exacerbate the existing problem by creating opportunities for another yet layer of motions**

**based on assertions that a movant's certification was "false" or that efforts to resolve the matter before filing the motion were not made in good faith.**") *Kitchen v. Corizon Health Inc.*, Case No. 1:16-cv-1068, 5 (W.D. Mich. Nov. 5, 2017).

It is Ms. Martin, not Defendants, who suffers as the case drags on without resolution. The prolonged litigation not only imposes additional stress and resource burdens on her but also delays the delivery of justice.

**i. Issuing and serving summonses is a routine and fundamental aspect of the judicial process, not an undue burden.**

The procedural step of issuing summons and service does not impose an "undue burden" on the Defendants of this lawsuit nor does it cause an "unnecessary burden" on the U.S. Marshal Service or the Court. It is a routine and fundamental aspect of the judicial process.

Defendants' attempts to portray this process as an excessive burden are baseless and serve to marginalize individuals who, like Ms. Martin, are forced to navigate the complex legal system without formal representation.

**ii. The District Court's authority to manage their dockets does not outweigh procedural mandates and due process requirements.**

Defendants argue—and it is true—that District courts have "inherent power to manage their dockets. *See Link* v. *Wabash R. Co*., 370 U.S. 626, 629–30, 82 S.Ct. 1386, 1388, 8 L.Ed.2d 734 (1962). That power, however, must be exercised in a manner that is in harmony with the Federal Rules of Civil Procedure. *See Hanna v. Plumer*, 380 U.S. 460, 471, 85 S.Ct. 1136, 1144, 14 L.Ed.2d 8 (1965)." *In re NLO, Inc.*, 5 F.3d 154, 157 (6th Cir. 1993).

It is well established that the inherent power is not "absolute". *See Thomas v. Arn*, 474 U.S. 140, 148 (1985) "Even a sensible and efficient use of the supervisory power, however, is invalid if it conflicts with constitutional or statutory provisions."

"Reliance on the pure inherent authority of the court is equally misplaced … [T]here are obvious dangers in too broad an interpretation of the federal courts' inherent power to regulate their procedure. One danger is that it encourages judicial high-handedness ("power corrupts"); … The broader concern illustrated by the Brock episode is that in their zeal to settle cases judges may ignore the value of other people's time. *G. Heileman Brewing Co. v. Joseph Oat Corp.,* 871 F.2d 648, 657 (7th Cir.1989) (Posner, J., dissenting)." *In re NLO, Inc.,* at 158.

While the Court has discretion to manage its docket, this does not outweigh procedural mandates and due process requirements, and exercising this discretion should not come at the expense of fair litigation. Allowing Defendants' tactical delays to dictate procedural outcomes undermines the principle of justice.

## IV. Conflicting Statements About Summons Issuance

Defendants claim, "This Court correctly refused to issue summonses for Plaintiff's amended complaint" (PageID.1592).

In reality, the Court's Order was silent on this matter. The automated electronic notice did not include an order and appeared (to Ms. Martin) to be an administrative action by the Clerk of the Court. However, during a June 14, 2024, phone conference between Ms. Martin and Defendants' counsel, they slipped and revealed that Magistrate Berens refused to issue the summonses, then quickly backtracked. If Magistrate Berens instructed the Clerk not to issue the

summonses, Magistrate Berens should have issued another sua sponte order reflecting this, so that Ms. Martin could appeal the decision.

## CONCLUSION

Defendants' actions and arguments reveal a troubling pattern of delay and manipulation. Their opposition to serving the new Defendants and simultaneous efforts to postpone the proceedings until their motions are addressed are tactics to skew the litigation in their favor of Thomas C. Walker, Andrew Cascini, and Bill Henn (Defendants to this lawsuit whom original Defendants' counsel has **not** formally entered an appearance on the record for). These strategies contradict their stated desire for efficiency and fairness, exposing a self-serving agenda that prolongs Ms. Martin's suffering and undermines the judicial process.

Defendants' deceptive tactics, falsehoods, and deliberate misrepresentations should not be allowed to influence this Honorable Court and their unfounded arguments should be rejected. It is essential to uphold procedural integrity and fairness, rather than allowing Defendants to sidestep basic legal responsibilities to further their own agenda.

Respectfully submitted,

Brittany E. Martin
*Plaintiff*

Dated: June 25, 2024

By: /s/ Brittany E. Martin
**Brittany E. Martin, *in Pro Se***
23 College Ave. SE, APT. 18
Grand Rapids, MI 49503
(616) 822-9423
bmartin0211@outlook.com

# EXHIBIT A

## Re: Local 7.1 Meet and Confer: Seeking Concurrence or Opposition on Motion for Recusal of Magistrate Judge Sally J. Berens

Britt Martin <bmartin0211@outlook.com>
Tue 5/28/2024 4:10 PM
To:Gutierrez, Michael <gutierrez@butzel.com>;Silver, Lee <silver@butzel.com>
Cc:Burk, Tyler A. <burkt@butzel.com>

Mike,

I can confirm that I would strongly oppose any motion to seal my amended complaint.

Regarding a motion to strike, could you clarifying whether you are seeking to strike the entire pleading, the specific paragraphs cited in Defendants' response to my appeal, or something else?

I am open to voluntarily striking a few specific items. For instance (non-exhaustive), I forgot to pull the extra copies from some of the exhibits—off the top of my head I know Exhibit V has 3 extra copies of Grace's packaging/letter/photos. Striking those duplicates would cut 37 pages off.

**Brittany E. Martin**

E: bmartin0211@outlook.com
P: (616) 822-9423

---

**From:** Gutierrez, Michael <gutierrez@butzel.com>
**Sent:** Tuesday, May 28, 2024 9:27 AM
**To:** Britt Martin <bmartin0211@outlook.com>; Silver, Lee <silver@butzel.com>
**Cc:** Burk, Tyler A. <burkt@butzel.com>
**Subject:** RE: Local 7.1 Meet and Confer: Seeking Concurrence or Opposition on Motion for Recusal of Magistrate Judge Sally J. Berens

Ms. Martin,

We do not concur in your request to seek recusal of Magistrate Judge Berens.

Relatedly, we are writing to seek your concurrence in the motion to strike and/or seal your proposed amended complaint that we intend to file tomorrow. The grounds for the motion are set forth in detail in Defendants' response to your appeal. Please let us know whether you will agree to voluntarily withdraw the new allegations pled in your amended complaint and, if not, whether you will agree to voluntarily seal the amended complaint. Thank you.

**Michael Gutierrez**
*Shareholder*
gutierrez@butzel.com

**Direct:** (616) 752-7223



Main: 616.988.5600 | Fax: 616.988.5606
300 Ottawa Ave. NW, Suite 620 | Grand Rapids, MI 49503




---

**From:** Britt Martin <bmartin0211@outlook.com>
**Sent:** Friday, May 24, 2024 2:55 PM
**To:** Silver, Lee <silver@butzel.com>
**Cc:** Burk, Tyler A. <burkt@butzel.com>; Gutierrez, Michael <gutierrez@butzel.com>
**Subject:** [EXTERNAL] Local 7.1 Meet and Confer: Seeking Concurrence or Opposition on Motion for Recusal of Magistrate Judge Sally J. Berens

All,

I intend to file a motion for the recusal of Magistrate Judge Sally J. Berens from this case under 28 U.S.C. § 455. The basis for this motion is that Magistrate Judge Berens has conflicts of interest arising from personal relationships with parties, potential parties, and material witnesses involved in this lawsuit that require recusal and a reasonable person, knowing all the relevant facts, would harbor doubts about her impartiality.

The grounds include the following:

**Magistrate Berens and Defendant Thomas C. Walker:**

- Both are active members and shareholders of the Grand Rapids Yacht Club.
- They have sailed together in the same fleet (Laser Fleet) since at least 2021.
- Magistrate Berens serves on the GRYC Board of Directors as a Director and Membership Committee Chair, with substantial powers granted to shareholders, including decisions on club dues, assessments, and real estate transactions.

**Magistrate Berens and Material Witness Mr. Paul Bacarella:**

- In or around August 2021, Magistrate Berens went on a date with Mr. Paul Bacarella, a material witness in this case.
- Mr. Bacarella is a close friend of mine and an ex-boyfriend of Gosia Walker. His relationship with Ms. Walker has overlapped with the events giving rise to this lawsuit.

**Magistrate Berens and David Edsenga:**

- Magistrate Berens has a longstanding friendship with David Edsenga, general counsel to Irish Roofing & Exteriors, a client of Defendant HL PLC. As a client of Defendant HL PLC, Mr. Edsenga has a significant personal and financial interest in shielding your clients and their law firm from exposure of wrongdoing, thus interest in the outcome of this litigation.

**Magistrate Berens' Connections to Forest Hills Public School District:**

- Her children attend my alma mater, Forest Hills Northern/Northern Hills Middle School

- My mother, Carie Skinner Kuhn, and stepfather, Jeffrey Brian Kuhn, have been employed as teachers at NHMS for approximately 25 years. The direct involvement of my mother and stepfather and their NHMS teacher colleagues, like Tonja Bogema, in the actions giving rise to this lawsuit indicates that they will be adverse parties and/or material witnesses in this case.

- My mother and stepfather have a vested personal and financial interest in the outcome of this case, and sadly their objectives are aligned with those of your clients.

- My stepbrother(s) and the children of Defendant Bill Henn are classmates with Magistrate Berens' children, complicating the potential for impartiality due to these personal connections within a closely-knit community.

- My contentious relationship with the FHPS district further complicates this matter. FHPS employees including my mother and stepfather will be material witnesses in this case. There is a high probability that they will become named defendants, and Forest Hills Public School District has a vested interest in protecting their employees, such as my mother and stepfather, from exposure of their wrongdoings. Given the fact that they have been or will be teachers of Magistrate Berens' children, there is a significant risk that Judge Berens would be biased in their favor to avoid ruling against her children's educators.

**Magistrate Berens' personal relationship and "recent collaboration" with Ms. Cathy Tracey:**

- On January 9, 2024, Catherine A. Tracey of Miller Johnson law firm entered an appearance on behalf of defendants Rockford Public School District and Rockford Public Schools' Board of Education.

- Magistrate Judge Berens immediately recused herself from the case due to "a recent collaboration with an attorney in the case." Magistrate Berens stated in her Order, "I recuse myself under 28 U.S.C. § 455(a) because my impartiality might be reasonably questioned based on a recent collaboration with one of the attorneys now appearing in the case."

- Ms. Tracey is a friend and colleague of Defendant Andrew Cascini and a former colleague of mine. Ms. Tracey, Mr. Cascini, and I worked together in the employment section at Miller Johnson until 2019.

- Ms. Tracey was one of the lead attorneys for Forest Hills Public School District in an explosive 2015 Title IX lawsuit over the district's response to a student's 2010 report that she had been sexually assaulted by a prominent athlete. FHPS settled for $600,000 in June 2015. Ms. Martin was a student at FHN during all of this.

- The student, Jane Doe, filed a federal lawsuit against FHPS district, (former) Superintendent Daniel Behm, (former) principal Terry Urquhart, **and (former) assistant superintendent and Title IX coordinator Anne Edsenga.** (Anne is the mother of Mr. David Edsenga and Mr. Patrick Edsenga)

In sum, the facts and circumstances regarding the relationships between Magistrate Judge Berens and...

1. Defendant Thomas C. Walker;

2. Mr. Paul Bacarella;
3. Mr. David Edsenga;
4. Forest Hills Public School District; and
5. Ms. Cathy Tracey,

...create conflicts of interest mandating recusal and are such that a reasonable person, knowing all the relevant facts, would harbor doubts about Magistrate Berens' impartiality. This perception is enough to warrant recusal under 28 U.S.C. § 455 to ensure that the proceedings are conducted with the utmost fairness and without any appearance of bias or prejudice.

Please let me know if you concur with or oppose this motion at your earliest convenience.

Thank you,

Brittany E. Martin

# EXHIBIT B

## Re: [EXTERNAL] Requesting Stip for Immediate Stay of Proceedings

Britt Martin <bmartin0211@outlook.com>

Fri 4/26/2024 9:03 AM

To:Silver, Lee <silver@butzel.com>;Hatch, Daniel <hatchd@butzel.com>
Cc:Burk, Tyler A. <burkt@butzel.com>;Gutierrez, Michael <gutierrez@butzel.com>

Lee,

My basis for stating that "your legal assistant has sent unsolicited electronic copies of your filings, ostensibly as a courtesy" is the email which included electronic copies of several filings attached that I received from your legal assistant on Thursday, February 22, 2024, at 10:25:11 AM. I have included the text of the email below:

*From: Schoonmaker, Gabrielle <schoonmaker@butzel.com>*
*Sent: Thursday, February 22, 2024 10:25:11 AM*
*To: Brittany Martin <bmartin0211@outlook.com>*
*Subject: Brittany Martin v Henn Lesperance, et al. [Case No. 1:24-cv-72]*

*Brittany –*

*Attached to this email is the Proposed Stipulated Order that was filed yesterday afternoon, the ECF Notification confirming Michael Gutierrez's appearance in this matter the entered Stipulated Order that we received this morning, as well as the Proof of Service that was just filed. A hard copy of these pleadings has also been mailed to you via first-class mail.*

This email serves as a clear instance where copies of filings were sent to me electronically without a specific request from me. While certainly appreciated, and understood to be sent as a professional courtesy, they were, in fact, unsolicited.

This example underscores my point that receiving such documents electronically from your office has been based on courtesy, not on any formal (or informal) agreement "to send each other pleadings and other filings via email" because your original statement was: "I thought we had previously agreed to send each other pleadings and other filings via email", suggesting that not sending you an electronic copy of my 11th hour motion was a failure to uphold or honor something that I had previously agreed to do, because it was not.

As to your concerns about not having received an electronic copy of my 11th hour motion from me via email:

*"Moreover, it is interesting that you have always emailed us what you have filed in this case—that is, until Monday, when you all of a sudden didn't email us what you had filed."*

When I say 11th hour, I mean 11th hour in that I pulled the motion off my printer, ran out my door, signed it while driving, and sprinted to the courthouse to make it to the clerk's office in time to file. As such, I did not have time to scan it to create an electronic copy, nor do I currently possess an electronic copy of it now because I have to purchase everything off PACER and I have already exceeded my quarterly allowance of $30 of free documents.

The fact that I have no duty to send an electronic copy via email, coupled with the logistical constraints, and the fact that I am dealing with an increasingly difficult family tragedy and crisis that has required the lion's share of my focus, presence, and attention for the past week (and will continue to), is why I did not send an electronic copy.

Regarding your assertion that "[I] expressly requested that [you] email [me] whatever [you] file with the Court in this case" ... that is incorrect. However, I do want to clarify, as I am not disputing that a conversation took place.

Our first correspondence in this lawsuit came by phone call from you on March 20, 2024. During this call, you informed me that you were going to go ahead and file your clients' motion to dismiss my complaint. You stated that you feel very confident in your motion, and that you believe that my complaint will be dismissed by the court but inquired as to whether I would be interested in discussing settling without having to wait on the court to rule on your motion.

I stated that I was sure your motion to dismiss was solid and acknowledged potential flaws in my original complaint, but reiterated that I would be amending it, and that I wouldn't be interested in settlement discussions prior to amending because I did (and still do) want the opportunity to put my best argument forward.

You stated that you're always eager to discuss settling since your goal with any case is to get it resolved as efficiently as possible rather than litigating and asked me to let you know if I change my mind or am interested in discussing settlement once I have a chance to see your motion.

In light of your eagerness to learn whether your motion to dismiss would change my stance on exploring settlement and acknowledging the potential strength of your motion and its relevance to my next steps, I asked if you would send me a copy of this particular filing via email.

You agreed and followed through.

My point is that this request was not, and could not be interpreted as, a blanket waiver of my procedural rights to service by mail nor could it constitute an agreement to send each other pleadings and other filings by email. It was a specific, isolated request made in a particular context, given the immediate implications of that motion on the ongoing discussions about possibly considering an early settlement.

Importantly, my practice of specifying in every certificate of service on record that my filings were served onto you by mail has been consistent and unambiguous, and your continued practice of serving all of the filings to me by mail, and reflecting that in your proofs of service on record, clearly demonstrates both parties' continued reliance on and respect for proper service as outlined by court rules.

I trust this detailed explanation clarifies and reaffirms that there has been no such agreement between us to send each other pleadings and other court filings via email nor has there been any waiver of my rights to service by mail.

Again, I want to note that I applied for electronic filing privileges in this case, but unfortunately, I was denied. In the future, I hope to try to seek leave to participate in electronic filing, as I recognize the significant advantages, cost savings, and efficiencies that would result for both parties.

As for your Tuesday, April 23, 2024, 8:33 PM request for me to email you an electronic copy of the motion I filed Monday, April 22, 2024, I am somewhat puzzled by it.

*Britt,*

*One thing I forgot to mention. I thought we had previously agreed to send each other pleadings and other filings via email. However, I did not see that you emailed me the motion that you said you filed yesterday. Can you please email it to us? Thank you. Lee.*

As registered electronic filers on the case, you and your team should have automatically received an email notification including a free electronic copy of the filing from the court's system the moment it was entered onto the docket.

This request, therefore, appears redundant and—under my current circumstances— somewhat inconsiderate. I trust you understand the necessity of focusing my limited resources on pressing family matters rather than on fulfilling unnecessary administrative requests.

Could you please clarify why this additional step is necessary?

Brittany E. Martin

---

**From:** Silver, Lee <silver@butzel.com>
**Sent:** Wednesday, April 24, 2024 11:03:30 AM
**To:** Britt Martin <bmartin0211@outlook.com>; Hatch, Daniel <hatchd@butzel.com>
**Cc:** Burk, Tyler A. <burkt@butzel.com>; Gutierrez, Michael <gutierrez@butzel.com>
**Subject:** Re: [EXTERNAL] Requesting Stip for Immediate Stay of Proceedings

Britt,

Are you serious??? What basis do have for stating that my "legal assistant has sent unsolicited electronic copies of [our] filings, ostensibly as a courtesy"??? You know as well as I do that on March 20, 2024 during a telephone conversation between you and I, you expressly requested that we email you whatever we file with the Court in this case because you said you don't receive notice of our filings through the Court e-filing system. I agreed to do so and told you that I would be happy to email you whatever we file as a result of your request. In fact, that same day that you and I had this conversation, I sent an email to our team informing them that you had requested that we email everything to you and that I told you that I would do so. As a result, I told our team in my email on March 20 to make sure that we email you a copy of whatever we file pursuant to your request. Since then, we have, in fact, emailed you everything we filed as you requested. This is why my assistant has sent you electronic copies of our filings. Do you seriously not remember this??? Moreover, it is interesting that you have always emailed us what you have filed in this case—that is, until Monday, when you all of a sudden didn't email us what you had filed. Lee.

**Lee Silver**
*Shareholder*
**silver@butzel.com**




Main: 616.988.5600 | Fax: 616.988.5606
300 Ottawa Ave. NW, Suite 620 | Grand Rapids, MI 49503







---

Confidentiality Statement: This message, including attachments, may be confidential, legally privileged, and/or subject to data privacy protections. If not for you, do not review, use or share it; notify us immediately and delete it. Thank you.

**From:** Britt Martin <bmartin0211@outlook.com>
**Date:** Wednesday, April 24, 2024 at 6:05 AM
**To:** "Silver, Lee" <silver@butzel.com>, "Hatch, Daniel" <hatchd@butzel.com>
**Cc:** "Burk, Tyler A." <burkt@butzel.com>, "Gutierrez, Michael" <gutierrez@butzel.com>
**Subject:** Re: [EXTERNAL] Requesting Stip for Immediate Stay of Proceedings

Lee,

In response to just your most recent email, there has never been any agreement—written, verbal, or implied—between us to send each other pleadings and other filings via email. Any suggestion otherwise is entirely unfounded and nonsensical.

However, your legal assistant has sent unsolicited electronic copies of your filings, ostensibly as a courtesy (as is common practice in the field).

To the extent this is an attempt to somehow frame this courtesy as me waiving my right to service by mail and consenting to electronic service, the fact that in the past week and a half alone I have incurred roughly $45 in costs to serve my filings on you by mail should alone dispel any notion of the existence of such an agreement.

Brittany E. Martin

---

**From:** Silver, Lee <silver@butzel.com>
**Sent:** Tuesday, April 23, 2024 8:33:46 PM
**To:** Britt Martin <bmartin0211@outlook.com>; Hatch, Daniel <hatchd@butzel.com>
**Cc:** Burk, Tyler A. <burkt@butzel.com>; Gutierrez, Michael <gutierrez@butzel.com>
**Subject:** Re: [EXTERNAL] Requesting Stip for Immediate Stay of Proceedings

Britt,

One thing I forgot to mention. I thought we had previously agreed to send each other pleadings and other filings via email. However, I did not see that you emailed me the motion that you said you filed yesterday. Can you please email it to us? Thank you. Lee.

**Lee Silver**
*Shareholder*
silver@butzel.com




Main: 616.988.5600 | Fax: 616.988.5606
300 Ottawa Ave. NW, Suite 620 | Grand Rapids, MI 49503









---

Confidentiality Statement: This message, including attachments, may be confidential, legally privileged, and/or subject to data privacy protections. If not for you, do not review, use or share it; notify us immediately and delete it. Thank you.

**From:** "Silver, Lee" <silver@butzel.com>
**Date:** Tuesday, April 23, 2024 at 8:04 PM
**To:** Britt Martin <bmartin0211@outlook.com>, "Hatch, Daniel" <hatchd@butzel.com>
**Cc:** "Burk, Tyler A." <burkt@butzel.com>, "Gutierrez, Michael" <gutierrez@butzel.com>
**Subject:** Re: [EXTERNAL] Requesting Stip for Immediate Stay of Proceedings

Britt,

I am writing in response to the email that you sent me this morning. While I thought about simply not replying to your email since you had already filed your motion yesterday, I feel I need to respond in light of your accusations that we intended to cause you to fall into a procedural trap and that we have engaged in gamesmanship. I take my reputation and that of our Firm very seriously and want to be clear that we did not intend to set any type of procedural trap for you and that we do not practice by engaging in gamesmanship. I hope that a brief recitation of the facts regarding your request to stay proceedings in this matter will help demonstrate this to you:

- On Friday, April 19, you sent us an email explaining that your aunt had tragically passed away in a house fire. As a result, you requested a stay of all proceedings in this case until May 6 so that you could support your family.

- I wrote back that same day to express my condolences and let you know that we would agree to your request and not take any action in the case until May 6 so that you could tend to your family.

- You responded and said that you wanted to clarify to make it clear that you were requesting a stay of all proceedings until May 6, including all deadlines in this case. I wrote back immediately on April 19 asking you to please specify what deadlines you wanted to extend since I did not object to tolling any deadlines that were pending but I was not aware of any and wanted to make sure that we were not unwittingly agreeing to extend any deadlines that had already lapsed.

- Unfortunately, you did not respond to my email. Instead, on Monday, April 22, you sent me an email with a proposed stipulation to extend certain deadlines, including the deadline to respond to our Motion to Dismiss and the deadline for you to appeal the decision of Magistrate Judge Berens. I wrote back that same day and advised you that while I didn't believe there was any merit to an appeal of the Order issued by Judge Berens, we would agree to extend the deadline for you to file an appeal of her Order as you requested if you chose to do so. However, I told you that I couldn't agree to extend the time for filing your response to our Motion to Dismiss because I thought the deadline for your response had already passed.

- Later that day on Monday, April 22, you emailed us a revised proposed stipulation. I responded within 10 minutes by explaining to you that I was in the middle of a mediation and didn't have the time to review your revised stipulation, but that I would ask someone else in our office to take a look at it. Dan Hatch of our office then sent you an email a short time later requesting that you please provide him with a Word version of your proposed stipulation so that he could revise it, which you did. Dan was kind enough to prepare a redlined version of your proposed stipulation which he sent to me for my review. My mediation ended up going late, but as soon as it ended, I sent our redlined version of the stipulation to you for your review. Our revised stipulation made it clear that we would agree to extend the deadlines for you as you had requested, as long as we were not agreeing to extend or revive any deadlines that had already lapsed, consistent with what we had been saying all along.

- You then sent me your email this morning accusing us of engaging in gamesmanship and trying to lay a procedural trap for you.

Britt, we tried hard to cooperate with you and told you that we would agree to toll the deadlines as you requested. We just wanted to make sure that we were not prejudicing the rights of our clients by agreeing to extend or revive deadlines that had already come and gone. This is all we were trying to do. I assure you we were not trying to cause you to fall into a procedural trap, engaging in gamesmanship, or otherwise trying to cause you prejudice. I hope you also understand that my schedule is such that I am tied up most days and can't always drop everything to respond to emails. However, I do my best to respond as quickly as I can, which I did in this case.

I hope the foregoing helps allay your concerns about our motivation and causes you to realize that rather than act with some nefarious motive, we were trying our best to cooperate with you and respond as quickly as we could. If you still question our motives and would like to discuss this further, I would be happy to do so. Lee.

**Lee Silver**
*Shareholder*
silver@butzel.com




Main: 616.988.5600 | Fax: 616.988.5606
300 Ottawa Ave. NW, Suite 620 | Grand Rapids, MI 49503







Confidentiality Statement: This message, including attachments, may be confidential, legally privileged, and/or subject to data privacy protections. If not for you, do not review, use or share it; notify us immediately and delete it. Thank you.

**From:** Britt Martin <bmartin0211@outlook.com>
**Date:** Tuesday, April 23, 2024 at 6:58 AM
**To:** "Hatch, Daniel" <hatchd@butzel.com>, "Silver, Lee" <silver@butzel.com>
**Cc:** "Burk, Tyler A." <burkt@butzel.com>, "Gutierrez, Michael" <gutierrez@butzel.com>
**Subject:** Re: [EXTERNAL] Requesting Stip for Immediate Stay of Proceedings

I am responding to the email below that I received last night, 4/22/24 at 10:08 PM from Mr. Silver here, for clarity and to ensure continuity from the most recent correspondence. I am also including the corresponding attachment to this email.

***

*Britt,*

*Attached is the red-lined version of the Stip and Order with our proposed edits. Please let me know if these are acceptable.*

*I apologize for the delay in getting back to you but have been tied up in a mediation all day that went late. Lee.*

***Lee Silver***

*Shareholder*

***silver@butzel.com***

***

Lee,

I understand that mediation can be unpredictable, and that in light of your prior commitments and the urgency of the situation and the impending deadline, you passed the torch to Mr. Hatch yesterday afternoon to facilitate the matter promptly.

In accordance with Federal Rule of Civil Procedure 6(d), and as previously indicated, my deadline to respond to your motion to dismiss, based on service by mail, was set for yesterday. Additionally, as we all know, I am self-represented and currently do not have the ability to file documents electronically; my application for electronic filing privileges was denied. Consequently, my capacity to file documents is significantly restricted compared to those who

can file electronically 24/7 and from any location. Given these limitations, I am only able to submit filings in person during the court's normal business hours of Monday through Friday, 8:30 AM to 4:30 PM. Therefore, the deadline for me to file the document was 4:30 PM yesterday, April 22, 2024.

Following your handoff to Mr. Hatch and his request for the document in Word format so that he could send me your team's revisions in track changes at 3:43 PM, to which I responded immediately at 3:44 PM, I anticipated a quick turnaround considering the fairly simple scope and tight time constraints.

I waited as long as I could in anticipation of Mr. Hatch's response, which never came. This strategy, unfortunately, left me with no choice but to file my own motion at the last minute requesting the court's intervention to resolve this issue in order to ensure my rights are not inadvertently compromised.

Despite its mootness, I have reviewed your proposed changes to the stip, received at 10:08 PM last night. I see that the changes you made substantially restrict the relief available to me and explicitly focus on ensuring the stipulation does not revive or extend any response deadlines that have been missed. The language here would have been the final step in flushing me out through what was clearly meant to be a procedural trap, since my window of opportunity in which I could have filed and remained within the deadlines was yesterday at 4:30 PM.

Fortunately, after the recent—and frankly, shocking—exploitation of our last 11th hour stipulation, I anticipated a possible continuance of gamesmanship and prepared a motion in advance this time, just in case.

Looking forward to the court's guidance on this matter.

Brittany E. Martin

---

**From:** Britt Martin <bmartin0211@outlook.com>
**Sent:** Monday, April 22, 2024 3:44:42 PM
**To:** Hatch, Daniel <hatchd@butzel.com>; Silver, Lee <silver@butzel.com>
**Cc:** Burk, Tyler A. <burkt@butzel.com>; Gutierrez, Michael <gutierrez@butzel.com>; Schoonmaker, Gabrielle <schoonmaker@butzel.com>
**Subject:** Re: [EXTERNAL] Requesting Stip for Immediate Stay of Proceedings

Attached here.

**Brittany E. Martin**

E: bmartin0211@outlook.com
P: (616) 822-9423

---

**From:** Hatch, Daniel <hatchd@butzel.com>
**Sent:** Monday, April 22, 2024 3:42 PM
**To:** Silver, Lee <silver@butzel.com>; Britt Martin <bmartin0211@outlook.com>
**Cc:** Burk, Tyler A. <burkt@butzel.com>; Gutierrez, Michael <gutierrez@butzel.com>; Schoonmaker, Gabrielle <schoonmaker@butzel.com>
**Subject:** RE: [EXTERNAL] Requesting Stip for Immediate Stay of Proceedings

Ms. Martin

Please email me your proposed stip and order in Word format so I can send you our revisions in track changes.

**Daniel Hatch**

*Shareholder*

hatchd@butzel.com

**Direct: (616) 752-7224 | Mobile: (616) 250-1307**




Main: 616.988.5600 | Fax: 616.988.5606

300 Ottawa Ave. NW, Suite 620 |
Grand Rapids, MI 49503




---

**From:** Silver, Lee <silver@butzel.com>
**Sent:** Monday, April 22, 2024 3:23 PM
**To:** Britt Martin <bmartin0211@outlook.com>
**Cc:** Burk, Tyler A. <burkt@butzel.com>; Gutierrez, Michael <gutierrez@butzel.com>; Hatch, Daniel <hatchd@butzel.com>; Schoonmaker, Gabrielle <schoonmaker@butzel.com>
**Subject:** Re: [EXTERNAL] Requesting Stip for Immediate Stay of Proceedings

Britt,

Thank you for sending this over. I am tied up in a mediation today. However, someone from our office will get back to you shortly since I don't have the ability to look at this right now. Lee.

**Lee Silver**

*Shareholder*

silver@butzel.com




Main: 616.988.5600 | Fax: 616.988.5606

300 Ottawa Ave. NW, Suite 620 | Grand Rapids, MI 49503









Confidentiality Statement: This message, including attachments, may be confidential, legally privileged, and/or subject to data privacy protections. If not for you, do not review, use or share it; notify us immediately and delete it. Thank you.

---

**From:** Britt Martin <bmartin0211@outlook.com>
**Date:** Monday, April 22, 2024 at 3:12 PM
**To:** "Silver, Lee" <silver@butzel.com>
**Cc:** "Burk, Tyler A." <burkt@butzel.com>, "Gutierrez, Michael" <gutierrez@butzel.com>, "Hatch, Daniel" <hatchd@butzel.com>, "Schoonmaker, Gabrielle" <schoonmaker@butzel.com>
**Subject:** Re: [EXTERNAL] Requesting Stip for Immediate Stay of Proceedings

**Brittany E. Martin**

E: bmartin0211@outlook.com

P: (616) 822-9423

---

**From:** Britt Martin <bmartin0211@outlook.com>
**Sent:** Monday, April 22, 2024 3:11 PM
**To:** Silver, Lee <silver@butzel.com>
**Cc:** Burk, Tyler A. <burkt@butzel.com>; Gutierrez, Michael <gutierrez@butzel.com>; Hatch, Daniel <hatchd@butzel.com>; Gabrielle Schoonmaker <schoonmaker@butzel.com>
**Subject:** Re: [EXTERNAL] Requesting Stip for Immediate Stay of Proceedings

Hi Lee,

Under FRCP Rule 6(d), when service is made by mail, an additional three days are added to the prescribed period to respond. I am self-represented and ineligible to use electronic filing, I was served by mail. Consequently, this extension applies, and therefore, the adjusted deadline for my response falls on today's date. Thus, my time to respond has not expired. Regardless, I have changed the language in the attached stip to accommodate your stance, please review and send a signed copy back as soon as possible so that I can prepare a physical filing and get down to the courthouse immediately.

Brittany E. Martin

---

**From:** Silver, Lee <silver@butzel.com>
**Sent:** Monday, April 22, 2024 1:19 PM
**To:** Britt Martin <bmartin0211@outlook.com>
**Cc:** Burk, Tyler A. <burkt@butzel.com>; Gutierrez, Michael <gutierrez@butzel.com>; Hatch, Daniel <hatchd@butzel.com>
**Subject:** Re: [EXTERNAL] Requesting Stip for Immediate Stay of Proceedings

Hi Britt,

I can't stipulate to extend the time for filing a response to our pending Motion to Dismiss because the deadline for that response was last week. In other words, contrary to what the proposed stipulation says that you sent, the deadline for responding has already passed.

However, I am willing to toll the deadline for you to file a claim of appeal of the Magistrate Judge's order from April 19 through May 6 provided the stipulation clearly states that we don't believe there is any merit to any appeal. (The reason we believe this is because the Judge was correct that you missed the deadline for filing an amended complaint as of right. Therefore, the Judge correctly struck the Amended Complaint.)

Also, I would prefer not to be the one to electronically file the stip since it may create the appearance that we are somehow requesting the stipulation. I hope this makes sense. Lee.

**Lee Silver**

*Shareholder*

**silver@butzel.com**



Main: 616.988.5600 | Fax: 616.988.5606

300 Ottawa Ave. NW, Suite 620 | Grand Rapids, MI 49503












---

Confidentiality Statement: This message, including attachments, may be confidential, legally privileged, and/or subject to data privacy protections. If not for you, do not review, use or share it; notify us immediately and delete it. Thank you.

---

**From:** Britt Martin <bmartin0211@outlook.com>
**Date:** Monday, April 22, 2024 at 7:02 AM
**To:** "Silver, Lee" <silver@butzel.com>
**Cc:** "Burk, Tyler A." <burkt@butzel.com>, "Gutierrez, Michael" <gutierrez@butzel.com>, "Hatch, Daniel" <hatchd@butzel.com>
**Subject:** Re: [EXTERNAL] Requesting Stip for Immediate Stay of Proceedings

Lee,

I appreciate your flexibility - attached for your review and signature is a stipulation for an extension until May 6, 2024, to respond to (1) the pending motion to dismiss, and (2) to appeal from Magistrate Berens April 16, 2024, nondispositive order.

If you would be willing to file the stip electronically today that would be a huge help, otherwise please shoot a signed copy back to me as soon as possible so that I can prepare a physical filing and get over to the courthouse before they close at 4:30.

Thanks again,

**Brittany E. Martin**

E: bmartin0211@outlook.com

P: (616) 822-9423

---

**From:** Silver, Lee <silver@butzel.com>
**Sent:** Friday, April 19, 2024 1:30 PM
**To:** Britt Martin <bmartin0211@outlook.com>
**Cc:** Burk, Tyler A. <burkt@butzel.com>; Gutierrez, Michael <gutierrez@butzel.com>; Hatch, Daniel <hatchd@butzel.com>
**Subject:** Re: [EXTERNAL] Requesting Stip for Immediate Stay of Proceedings

Britt,

I am not aware of any currently pending deadlines. Please let me know what deadlines you are referring to so that I know what you are asking us to agree to. Lee.

**Lee Silver**

*Shareholder*

silver@butzel.com




Main: 616.988.5600 | Fax: 616.988.5606

300 Ottawa Ave. NW, Suite 620 | Grand Rapids, MI 49503










---

Confidentiality Statement: This message, including attachments, may be confidential, legally privileged, and/or subject to data privacy protections. If not for you, do not review, use or share it; notify us immediately and delete it. Thank you.

---

**From:** Britt Martin <bmartin0211@outlook.com>
**Date:** Friday, April 19, 2024 at 1:10 PM
**To:** "Silver, Lee" <silver@butzel.com>
**Cc:** "Burk, Tyler A." <burkt@butzel.com>, "Gutierrez, Michael" <gutierrez@butzel.com>, "Hatch, Daniel" <hatchd@butzel.com>
**Subject:** Re: [EXTERNAL] Requesting Stip for Immediate Stay of Proceedings

To clarify, I am seeking your agreement to a stipulation to stay all proceedings until May 6, 2024, including deadlines and all other legal obligations.

Brittany E. Martin

---

**From:** Silver, Lee <silver@butzel.com>
**Sent:** Friday, April 19, 2024 12:49 PM
**To:** Britt Martin <bmartin0211@outlook.com>
**Cc:** Burk, Tyler A. <burkt@butzel.com>; Gutierrez, Michael <gutierrez@butzel.com>; millerb@butzel.com <millerb@butzel.com>; Hatch, Daniel <hatchd@butzel.com>
**Subject:** Re: [EXTERNAL] Requesting Stip for Immediate Stay of Proceedings

Britt,

I am very sorry to hear about aunt. My condolences to you and your family.

Under the circumstances, we will not file anything or take any action in this case that involves the Court until May 6 so that you can tend to your family (assuming, of course, that the Court does not Order us to do something in the next two weeks, which I am not anticipating).

Again, I am sorry for your loss. Lee.

**Lee Silver**

*Shareholder*

**silver@butzel.com**




Main: 616.988.5600 | Fax: 616.988.5606

300 Ottawa Ave. NW, Suite 620 | Grand Rapids, MI 49503







---

Confidentiality Statement: This message, including attachments, may be confidential, legally privileged, and/or subject to data privacy protections. If not for you, do not review, use or share it; notify us immediately and delete it. Thank you.

---

**From:** Britt Martin <bmartin0211@outlook.com>
**Date:** Friday, April 19, 2024 at 1:04 AM
**To:** "Silver, Lee" <silver@butzel.com>
**Cc:** "Burk, Tyler A." <burkt@butzel.com>, "Gutierrez, Michael" <gutierrez@butzel.com>, "millerb@butzel.com" <millerb@butzel.com>
**Subject:** [EXTERNAL] Requesting Stip for Immediate Stay of Proceedings

All,

I hope this message finds you well.  I am writing under very difficult circumstances, having received the devastating news this morning of my aunt's unexpected death in a house fire. The situation is remains under investigation.

https://www.fox17online.com/news/local-news/kent/woman-dies-in-wyoming-house-fire-investigation-underway.

Given the severity of this family crisis, my immediate priorities are caring for her children, my younger cousins.

Accordingly, I am requesting a stipulation for an immediate stay of all proceedings until Monday, May 6, 2024,to allow me the necessary time to support my family during this calamitous time.

Please let me know at your earliest convenience if you are amenable to stipulating to stay the proceedings, or if there are any concerns.

Thank you for your understanding.

Brittany E. Martin