# EXHIBIT A

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

_____

BRITTANY E. MARTIN,

Plaintiff,

v.

HENN LESPERANCE PLC, et al.,

Defendants.

Case No.: 1:24-cv-00072

HON. Hala Y. Jarbou

Magistrate Ray Kent

| | |
|---|---|
| Brittany E. Martin<br>Plaintiff in Pro Se<br>(616) 822-9423<br>23 College Ave. SE, APT. 18<br>Grand Rapids, MI 49503<br>bmartin0211@outlook.com | Lee T. Silver (P36905)<br>Michael L. Gutierrez (P79440)<br>Daniel J. Hatch (P79258)<br>Tyler A. Burk (P85077)<br>BUTZEL LONG, PC<br>*Attorneys for* Henn Lesperance PLC,<br>Kevin Lesperance, Malgorzata<br>("Gosia") Walker, and Roy H. Johnson<br>300 Ottawa Ave. NW, Suite 620<br>Grand Rapids, Michigan 49503<br>silver@butzel.com<br>gutierrez@butzel.com<br>hatchd@butzel.com<br>burkt@butzel.com |

## ORAL ARGUMENT REQUESTED

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO STRIKE AND SEAL PLAINTIFF'S FIRST AMENDED COMPLAINT

**INTRODUCTION**

Defendants' motion to strike fails because the challenged allegations are directly related to the dispute and do not unfairly prejudice Defendants. Defendants want to control the narrative; which is the purpose of Defendants present motion. They want to suppress the truth and the facts. They don't want the Court or anyone to know the truth about what actually happened.

**FACTUAL BACKGROUND**

I.   **Despite prior agreements to collaboratively address the concerns raised in their motion, Defendants have demonstrated a disregard for judicial economy, procedural efficiency, and the local rules that require genuine meet-and-confer efforts.**

- **Background and Meet-and-Confer Efforts:**

On Tuesday, May 28, 2024, at 9:27 AM, Defendants' counsel communicated their intention to file a motion to strike and/or seal Ms. Martin's proposed amended complaint, seeking concurrence. Ms. Martin responded that she unequivocally opposed any motion to seal her amended complaint and requested clarification regarding the specifics of the motion to strike. She expressed a willingness to address certain redundant or non-essential elements voluntarily, including the removal of duplicate copies within the exhibits. For example, she noted:

"I am open to voluntarily striking a few specific items. For instance (non-exhaustive), I forgot to pull the extra copies from some of the exhibits—off the top of my head I know Exhibit V has 3 extra copies of Grace's packaging/letter/photos. Striking those duplicates would cut 37 pages off." (ECF No. 77-1, PageID.1767).

During a follow-up meet-and-confer phone call on May 30, 2024, at 6:07 PM, Ms. Martin reiterated her openness to revising her amended complaint to address Defendants' concerns. In response, Defendants proposed to compile a list of specific items they wished to strike and/or seal and provide this list to Ms. Martin for her review before filing their motion to "see if we could land a plane." The aim was to reach a mutual agreement, narrowing the scope before seeking court intervention. Ms. Martin agreed to consider these requests and even granted Defendants a 21-day extension to facilitate this, resulting in the stipulated briefing schedule (ECF No. 63).

- **Defendants' Failure to Honor Prior Agreement:**

Contrary this agreement, Defendants used the extension, but proceeded to file the motion to strike and seal the amended complaint without engaging in any further discussions to refine and narrow down the issues.

- **Dishonest Representations in Defendants' Certificate of Concurrence:**

Defendants' "Certificate of Attempt to Obtain Concurrence" (ECF No. 76, PageID.1745) falsely represented Ms. Martin's position, omitting her documented offer to voluntarily strike portions of her FAC and the 21-day extension to streamline issues before involving the Court. These omissions are deliberate attempts to mislead the Court and unjustly paint Ms. Martin negatively.

Defendants also mislead the court and waste court resources by dedicating a substantial portion of their motion to strike plaintiff first amended complaint to arguing for the court to strike duplicative, redundant or non-essential elements, including the removal of duplicate copies within the exhibits, which Ms. Martin already acknowledged,

offered, and agreed to correct voluntarily prior to this motion being filed. This bad faith tactic underscores Defendants' real motive: to avoid addressing the substantive, irrefutable allegations in the FAC.

- **Disregard for Judicial Economy**

Defendants also misled the Court and wasted court resources by dedicating a substantial portion of their motion to arguing for the removal of duplicative, redundant, or non-essential elements, which Ms. Martin had already acknowledged, offered, and agreed to correct voluntarily prior to this motion being filed. This bad faith tactic underscores Defendants' real motive: to avoid addressing the substantive, irrefutable allegations in the FAC.

- **Already Public Record**

Defendants refuse to let arguments go both ways. They only ever want to have arguments work in their favor, but when Miss Martin raises the same one, they want a different outcome. For example, as Defendants brought up and used in support of their argument as to why *they* should be able to admit evidentiary material (screenshots, or photocopies of Ms. Martin's personal social media posts and text messages) accompanying their original motion to dismiss without it being converted to a motion for summary judgment, the content which Defendants now seek to strike and seal is already a matter of public record.

## APPLICABLE LAW AND ARGUMENT

**II.    Defendants' Fail**

    ○  **Rule 8**

After Plaintiff filed this lawsuit, Defendants filed a Motion to Dismiss based on Rule 12(b)(6). (ECF No. 15). In their brief, Defendants argued that the "claims should be dismissed because they fail to meet the pleading standards requiring plausibility and sufficient factual allegations as a matter of law."

After receipt of Ms. Martin's FAC, Defendants now realize that all of these arguments fail. Plaintiff has sufficiently plead facts and provided incontrovertible evidence of the allegations.

*House of Providence v. Meyers*, 458 F. Supp. 3d 621 (E.D. Mich. 2020) ("While the amended complaint could have been drafted more concisely, the Court is not persuaded that any portions of it should be stricken. Defendants have not shown that the allegations they find objectionable bear no relation to the controversy. Defendants' motions to strike are therefore denied.").

What is a short and plain statement of a claim or a simple, clear, and direct allegation will, of course, depend on the totality of the circumstances: more complicated cases will generally require more pleading. What Rule 8 proscribes is obfuscation of the plaintiff's claims. See *Swierkiewicz* , 534 U.S. at 514, 122 S.Ct. 992.

    ○  **Photos / Exhibits**

"The court is not limited to only considering documents that fall within this narrow definition "legal instruments." Sixth Circuit case law is very clear that courts may consider documents that are referenced in the plaintiff's complaint and that are central to plaintiff's claims. *See, e.g.*, *Rondigo LLC v. Twp. of Richmond*, 641 F.3d 673, 680-81 (6th

Cir. 2011). This policy makes sense because a plaintiff would otherwise have the ability to survive a motion to dismiss "simply by failing to attach a dispositive document upon which it relied." *Weiner v. Klais & Co., Inc,* 108 F.3d 86, 89(6th Cir. 1997), *abrogated on other grounds by Swierkiewicz v. Sorema N. A.,* 534 U.S. 506 (2002). Nothing in our case law suggests we are prevented from considering documents that are not formal legal instruments if they are referenced in the complaint and central to the plaintiff's claims, and this court has considered less formal documents than the Letter before. *See, e.g., Seaton v. TripAdvisor LLC,* 728 F.3d 592, 595 (6th Cir. 2013) (allowing consideration of a screenshot of an Internet list that was referred to in the plaintiff's complaint).) *Gulfside Casino P'ship v. Churchill Downs Inc.,* No. 20-6423 (6th Cir. Jun. 22, 2021)

- **ECF 17-5, PageID.716-722 (proposed separation agreements subject to evidentiary challenges under FRE 408)**

Defendants claim that ECF 17-5, PageID.716-722, which includes proposed separation agreements, should be struck because they are subject to evidentiary challenges under FRE 408. However, these documents are highly relevant to Ms. Martin's claims. They provide crucial context and evidence of Defendants' intent to silence her through coercive legal agreements. This context is essential to demonstrate Defendants' bad faith and retaliatory actions. The inclusion of these documents is not for the purpose of proving liability but to illustrate the broader pattern of Defendants' misconduct and the hostile work environment Ms. Martin faced.

## III. Defendants' Misrepresentations

Defendants have a documented history of manipulating and distorting facts to suit their narrative. Their claim that Ms. Martin's allegations are impertinent and scandalous

is a continuation of this strategy. Defendants' attempt to label these documented and verified incidents as "conspiracy theories" is not only a blatant lie but a reprehensible tactic to evade accountability. The evidence provided by Ms. Martin is irrefutable and directly implicates the defendants in a campaign of harassment, intimidation, and attempted murder.

Ms. Martin's First Amended Complaint (FAC) meticulously details the harrowing experiences she has faced, supported by concrete evidence and verified incidents. Here is a breakdown of the key points, underscoring the veracity of her claims:

1. **Tampered Tire Incident (Attempted Murder)**:

   o On February 12, 2021, Ms. Martin discovered that the lug nuts on her rear passenger tire had been methodically and severely loosened, posing a severe risk to her life. This was not a random act of vandalism but a calculated attempt to cause catastrophic harm. This incident is supported by tangible evidence, including a Belle Tire invoice and photos of the tampered tire.

2. **Indifference from Law Enforcement**:

   o Ms. Martin's attempts to seek help from the Grand Rapids Police Department were met with staggering indifference. This pattern of neglect continued as she faced further life-threatening encounters, including being drugged, stalked, harassed, and physically assaulted by men with histories of violent behavior.

3. **Ongoing Surveillance and Harassment**:

    o  Ms. Martin has endured relentless stalking and harassment, both physically and electronically. Her electronic devices have been cloned, hacked, and tampered with, creating a state of constant vigilance and fear. This ongoing harassment has extended to her family, friends, and supporters, who have also been threatened and harassed.

4. **Weaponization of PPOs**:

Defendants have exploited the legal system by weaponizing Personal Protection Orders (PPOs) against Ms. Martin. These PPOs, obtained through false allegations and with the complicity of Judge J. Joseph Rossi, have been used to discredit and malign Ms. Martin further. The abuse of the PPO process is highlighted in a detailed report by WOOD TV, which discusses the systemic issues with PPOs in Grand Rapids.

## IV.   Defendants' Misrepresentation and Evasion

The defendants' attempt to label these documented and verified incidents as "conspiracy theories" is not only a blatant lie but a reprehensible tactic to evade accountability. The evidence provided by Ms. Martin is irrefutable and directly implicates the defendants in a campaign of harassment, intimidation, and attempted murder.

Concrete Evidence:

The allegations made by Ms. Martin are not speculative or baseless. They are supported by physical evidence, witness testimonies, and documented incidents. Defendants' attempt to dismiss these serious claims as conspiracies is a desperate and dishonest effort to avoid facing the consequences of their actions.

Transparency and Accountability:

If the defendants truly believed that Ms. Martin's allegations were unfounded, they would have no reason to seek to strike or seal the evidence. Their actions reveal a palpable fear of the truth coming to light, further validating Ms. Martin's claims. The defendants' desperation to suppress this information only serves to underscore their guilt.

## V.   Defendants' Hypocrisy

Defendants can't have it both ways. They can't argue in the first instance that the initial Complaint failed to state sufficient facts, and then when confronted with the facts of their own misconduct and misdeeds, argue that the Plaintiff stated too many facts. Defendants could have simply filed an answer. They did not. Instead, they filed a motion to dismiss (ECF No. 15) wherein they argued up and down that Plaintiff failed to state sufficient facts.

See *Hahn v. Best Recovery Servs., LLC*, No. 10-12370, 2010 WL 4483375, at *2 (E.D. Mich. Nov. 1, 2010) ("The Sixth Circuit Court of Appeals has advised that "because of the practical difficulty of deciding cases without a factual record it is well established that the action of striking a pleading should be sparingly used by the courts. It is a drastic remedy to be resorted to only when required for the purposes of justice." *Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (1953) (citations omitted). The court further advised that "[a] motion to strike should be granted only when the pleading to be stricken has no possible relation to the controversy." *Id.*)

## VI.   Strike

Defendants move to strike large swaths of Ms. Martin's FAC. But they do not apply a standard for a motion to strike to any specific allegation. Instead, they group dozens of

allegations into broad categories, mischaracterizing them along the way. Because Defendants fail to meet the exacting burden on a motion to strike, their motion should be denied.

Both because striking a portion of a pleading is a drastic remedy and because it often is sought by the movant simply as a dilatory or [harassing] tactic, numerous judicial decisions make it clear that motions under FRCP 12(f) are viewed with disfavor by the federal courts and are infrequently granted. FPP § 1380; BJC Health Sys. v. Columbia Cas. Co., 478 F.3d 908 (8th Cir. 2007).

Defendants argue that the FAC improperly includes:

- **"Dozens of irrelevant text messages, many of which contain derogatory, harassing, and scandalous comments and accusations about numerous nonparties. (See, e.g. Id. at PageID.273 – 279).**

However, Defendants' statement is false and misleading and fails to acknowledge the context and significance of the communications they specifically cite to.

These messages are admissible and pertinent because they are messages from Defendant HR/Office Manager Gosia Walker, operating under the anonymous alias "HannahTreeClimber" on Instagram. HR/Office Manager Gosia Walker used this fake identity to sexually harass, intimidate, stalk, defraud, and retaliate against Ms. Martin for months.

On or about December 11, 2021, Ms. Martin received an unsolicited message from an Instagram account named "Hann, @HannahTreeClimber." Subsequent investigations revealed that the individual behind this account was Gosia Walker, the HR/Office manager at Henn Lesperance PLC.

Evidence includes:

Text messages of direct admissions by Gosia Walker of being the imposter and her stated goals being:

**(1)**

**(2)      Irrelevant allegations about Defendants' ethnicity, immigration status, family relationships, *their children*, alleged criminal record, and other personal information. (*Id.* at PageID.269-270, 290-296).**

- **Ethnicity:**

- **Immigration status:**

- **Family relationships:**

- **Their children:**

- **"Alleged" criminal record:**

Defendants' hypocrisy is blatant. They argue the FAC violates Rule 8 for being overly detailed, yet capitalize on any omission to undermine Ms. Martin's claims. For instance, they claim the absence of an exhibit regarding Defendant Gosia Walker's criminal record renders the allegations "alleged."

Ms. Martin included extensive exhibits precisely to preempt such bad faith tactics. Gosia Walker's criminal record is public and indisputable:

Fact: Gosia Walker was arrested and charged with shoplifting (RETAIL FRAUD SECOND DEGREE under Michigan Penal Code 750.356(d)) on July 14, 2022, and convicted on August 16, 2022.

Defendants' dismissal of these well-documented facts as "alleged" only highlights their strategy to distract from the truth. Ms. Martin's comprehensive documentation aims to ensure all claims are substantiated, leaving no room for Defendants' manipulative denials.

- **Irrelevant and scandalous allegations against a non-party attorney. For example, Plaintiff alleges that a local attorney's "interests and hobbies are 'Asians and strippers'" and that the attorney allegedly "has incriminating dirt and blackmail on several high-profile attorneys in the Grand Rapids area." (ECF No. 17, PageID.404, ¶¶786-787). These allegations have no connection to Plaintiff's claims, but are instead intended to injure personal reputations.**

Response to Defendants' Argument on Allegations Against Non-Party Attorney Todd Stuart

Defendants claim that allegations against non-party attorney Todd Stuart, including his "interests and hobbies" and his possession of incriminating material on high-profile attorneys, are irrelevant and scandalous. (PageID.403-404, ¶¶785-787). They argue these allegations are intended solely to injure personal reputations. In reality, these allegations are integral to demonstrating the undue influence and coercive environment underlying the defendants' actions.

Relevance of Todd Stuart's Alleged Interests and Influence

Demonstrating Undue Influence and Coercive Environment:

Ms. Martin's allegations concerning Todd Stuart's interests and his control over high-profile attorneys, including Mr. Cascini, are crucial to understanding the motives and

pressures behind the defendants' actions. These elements provide a comprehensive context for the fraudulent activities reported and the subsequent hostile work environment experienced by Ms. Martin.

Documented Evidence:

Ms. Martin has documented evidence in the form of text messages from Andrew Cascini explicitly stating Todd Stuart's interests. Additionally, Mr. Cascini verbally informed Ms. Martin about Todd Stuart's possession of significant blackmail material on high-profile attorneys in the area. These communications are crucial in establishing the undue influence and coercive environment that led to the alleged fraudulent activities and the adverse actions against Ms. Martin.

Context of Corruption and Coercion:

Understanding Todd Stuart's alleged activities and influence is vital to illustrating the broader environment of corruption and coercion within which the defendants operated. This context is necessary to demonstrate the motivations behind the PPP loan fraud and the retaliatory measures taken against Ms. Martin for her protected activities of reporting these concerns.

Core Issues and Context

Relevance to Core Issues:

The allegations concerning Todd Stuart's influence are directly relevant to the core issues of the case. They provide necessary context for understanding the behavior and decisions of Andrew Cascini, which are central to the claims of PPP loan fraud and retaliation. Without this context, the actions of Mr. Cascini may appear inexplicable and unjustified.

Broader Pattern of Coercion and Corruption:

Ms. Martin has provided text messages from Andrew Cascini that explicitly mention Todd Stuart's interests and his influence over high-profile attorneys. These communications are not isolated but part of a broader pattern that underscores the coercive and corrupt environment in which the defendants operated.

Legal Support for Inclusion:

Legal precedent supports the inclusion of contextually relevant allegations, even if they involve potentially scandalous details, when they are necessary to demonstrate motive, influence, or a pattern of behavior. The exclusion of such details would hinder the court's ability to fully understand the dynamics at play and the pressures faced by Ms. Martin.

Intent and Relevance:

While the details concerning Todd Stuart's interests are sensitive, they are presented to illustrate his significant influence over Andrew Cascini and the coercive environment that affected Plaintiff's work conditions. The intent is to provide factual and relevant context, not to scandalize.

The allegations against Todd Stuart are neither irrelevant nor scandalous but are essential to revealing the undue influence and coercive environment that contributed to the fraudulent activities and retaliatory actions against Ms. Martin. These details provide necessary context to understand the motivations behind the defendants' actions and the pressures faced by Ms. Martin. Excluding these details would obscure the full extent of the misconduct and the environment in which it occurred.

- **Details of protected health information that Plaintiff alleges had been improperly disclosed, but that she chooses to insert for no valid reason. (*Id*. at PageID.350-351).**

In reality, Plaintiff included these details to highlight the gross misconduct of Defendant HR Office Manager Gosia Walker, who routinely used her high-level position to degrade and expose confidential private health information of employees through word of mouth and documented text messages, violating HIPAA.

For example, Ms. Martin provided specific instances where HR/Office Manager Gosia Walker exposed and ridiculed employees' accommodation requests and personal health issues to other employees. This behavior not only violated privacy laws but also created a toxic and discriminatory workplace environment, making it extremely risky and uncomfortable for Ms. Martin and others to request accommodations. The inclusion of these details in the Amended Complaint is necessary to demonstrate the Defendants' unlawful HR/management practices and the hostile work environment they fostered. Defendants' complaints about the inclusion of these text messages are unfounded.

These messages are Gosia Walker's own words, sent during her employment and reflecting her continuous, relentless violations of employee privacy. Plaintiff's inclusion

of this information is critical to understanding the full extent of the Defendants' misconduct and the detrimental impact it had on her and other employees.

- **Plaintiff including a worker's compensation letter that has nothing to do with her and unnecessarily reveals a Defendant's partial social security number (PageID.404, ¶771).**

In reality, the worker's compensation letter is highly relevant to Ms. Martin's claims. Ms. Martin has alleged several employment discrimination and retaliation claims against Defendants. This includes sexual harassment, sexually hostile work environment, widespread sexual favoritism, sex discrimination, and retaliation under Title VII and Michigan ELCRA.

As the complaint details, On or about December 16, 2020, Ms. Martin alerted Partner Andrew Cascini of suspicious activity by Defendants Kevin Lesperance and HR/Office Manager Gosia Walker.

Defendants Gosia Walker and Kevin Lesperance, in conspiracy with Mr. Ryan Duffy, a hospital reimbursement attorney, knowingly and unlawfully filed a fraudulent worker's compensation claim intending to procure payment for Gosia Walker's non-work-related medical bills.

The claim was submitted for Defendant Gosia Walker despite her injury and related bills being unrelated to employment in that Gosia Walker's injury occurred while Gosia Walker was outside the office.

Defendants Gosia Walker and Kevin Lesperance intentionally did not disclose the filing of this claim with the firm's other managing partners, including a partner specializing in employment law, thereby concealing their actions.

To further conceal their actions from the other partners, Defendants Gosia Walker and/or Kevin Lesperance listed Kevin Lesperance's personal residence, not the firm's address, as the return mailing address for return correspondence related to the worker's compensation claim.

In doing so, one or both Defendants intentionally employed a strategy of deception that included routing claim-related correspondence to Defendants Kevin Lesperance's personal address to avoid internal detection.

As a result, Kevin Lesperance's wife, entirely uninvolved and unaware of the fraudulent nature of the claim and even the existence of the claim, innocently encountered the claim's correspondence delivered to her home.

Acting in good faith, completely unaware of the fraudulent activities, and believing the matter to be merely firm-related, Ms. Lesperance forwarded this correspondence to Defendants Bill Henn and Andrew Cascini.

As the text messages show, Bill Henn denied any prior knowledge of the false claim's existence and attempt to dismiss it and blame the delivery of the correspondence to Lesperance's home address to administrative errors by the State of Michigan.

Defendant Bill Henn's subsequent denial of knowledge and attempt to attribute the delivery of the correspondence to Lesperance's home address to administrative errors by the State of Michigan was knowingly false and designed to further conceal the fraudulent scheme perpetrated by Defendants Walker, Lesperance, and Duffy.

It was only after discussing the matter with Ms. Martin that Ms. Lesperance became aware of the claim's fraudulent nature, having been misled into believing the claim was legitimate.

- Defendants' complaint about the worker's compensation letter including Defendant Gosia Walker's "partial social security number" is baseless. Fed. R. Civ. P. 5.2(a) governs redacted filings. Fed. R. Civ. P. 5.2(a)(1) provides, "Unless the court orders otherwise, in an electronic or paper filing with the court that contains an individual's social-security number, a party or nonparty making the filing may include only: ... The last four digits of the social-security number" The worker's compensation letter includes only the last four digits of Gosia Walker's social-security number.

- Furthermore, Fed. R. Civ. P. 5.2(b) governs exemptions from redaction requirements. Fed. R. Civ. P. 5.2(b)(2) provides, "The redaction requirement does not apply to ... the record of an administrative or agency proceeding." The worker's compensation letter is part of the record of the Worker's Compensation Agency proceeding that was fraudulently initiated by Defendant Kevin Lesperance to obtain ill-gotten financial gains for Defendant Gosia Walker, who was his mistress at the time he made the false claim. The false claim was filed with State of Michigan Department of Labor and Economic Opportunity Worker's Disability Compensation Agency and the claim number is DCN: 11202020156.

- **Defendants argue that Plaintiff's exhibits should be struck under Rules 8 and 12(f) because they are allegedly duplicative, scandalous, involve impertinent and irrelevant matters, and constitute improper evidentiary material. Specifically, they reference ECF 17-10, PageID.907-922, an affidavit with a redacted declarant name and allegedly duplicative emails.**

Relevance and Necessity of Redacted Affidavit:

The redaction of the declarant's name is not an attempt to include improper material but a necessary measure to protect the individual from potential harm. Ms. Martin has a genuine and substantiated fear that Defendants and their team of fixers will find the declarant and subject them to threats, harassment, intimidation, blackmail, or

bribery. This fear is based on documented instances of similar conduct by Defendants and their fixers towards multiple other individuals involved in this case.

Justification for Redaction: Protection of Witnesses

The redaction is crucial to safeguard the declarant from retaliation. Defendants have a history of threatening and harassing individuals connected to this case. Protecting the declarant's identity is essential to prevent further intimidation and to ensure the integrity of their testimony.

Supporting Evidence of Retaliatory Conduct:

The redacted affidavit provides critical evidence of the retaliatory environment created by the defendants. This context is vital for understanding the lengths to which defendants have gone to manipulate and control the narrative.

Legitimacy and Authenticity:

The affidavit, even with redaction, is a legitimate piece of evidence. The content of the affidavit and the supporting emails are not duplicative but corroborative, providing essential context and substantiation for Ms. Martin's claims.

**VII.    Defendants' have no basis whatsoever to seal the FAC**

The party seeking to seal records has the heavy burden of overcoming the 'strong presumption in favor of openness.'" Kondash v. Kia Motors Am., Inc., 767 F. App'x 635, 637 (6th Cir. 2019) (quoting Shane Grp., Inc., 825 F.3d at 305). The party seeking to seal the records must demonstrate three things: (1) "a compelling interest in sealing the records"; (2) "that the interest in sealing outweighs the public's interest in accessing the records"; and (3) "that the request is narrowly tailored." Id. If the party can show a

compelling interest in keeping the documents unavailable to the public, then it must demonstrate why those compelling reasons "outweigh the public interest in access to those records and that the seal is narrowly tailored to serve that reason." Id. Meeting this burden requires the defendant to "analyze in detail, document by document, the propriety of secrecy, providing reasons and legal citations." Shane Grp., Inc., 825 F.3d at 305-06.

Defendants have not provided the detailed analysis necessary to meet their burden under controlling Sixth Circuit precedent.

*Shane Grp*., 825 F.3d at 305, ("To justify sealing requires overcoming the "strong presumption in favor of openness." Brown & Williamson, 710 F.2d at 1179. That's no easy task. To do so, the Court considers "why the interests in support of nondisclosure are compelling, why the interests supporting access are less so, and why the seal itself is no broader than necessary." Shane Grp., 825 F.3d at 306. The Sixth Circuit has repeatedly cautioned that "only the most compelling reasons can justify nondisclosure of judicial records." In re Nat'l Prescription Opiate Litig., 927 F.3d 919, 940 (6th Cir. 2019) (cleaned up). And any sealing order must be "narrowly tailored" to serve the reason asserted.")

These requirements have not been met here.

Defendants' vague and conclusory allegations fall far short of overcoming the "strong presumption in favor of openness" of court records. (*See Shane Grp*., 825 F.3d at 305; *see also Brown & Williamson*, 710 F.2d at 1179-80 (citing *Joy v. North*, 692 F.2d 880, 884 (2d Cir. 1982)) ("A naked conclusory statement that [disclosure will injure a producing party] . . . falls woefully short of the kind of showing which raises even an arguable issue as to whether it may be kept under seal.").)

Defendants also argue that Ms. Martin's FAC is somehow intended to harass and embarrass Defendants. This argument is disingenuous. It is the epitome of contradiction for these Defendants to now claim an interest in privacy to avoid embarrassment.

Indeed, the situation as it is right now is a huge problem. Defendants have been able to spin doctor, the record and demonize Miss Martin based on there, fantastical absurd. Anyone looking at this record can only see defendants desperate false contorted allegations. This works out really well for them. The first amended complaint was improperly, struck from the rip.

## CONCLUSION

As Courts have cautioned, motions to strike are often exercises in unnecessary delay. This is no exception. Defendants failed to apply the correct standard, or even their own standard, to the paragraphs they seek to strike. And they have failed to articulate a coherent explanation of how any disputed paragraph has "no possible relation" to the larger dispute, or how the inclusion of any such paragraph unduly prejudices any of them.

Defendants' motion to strike and seal the allegations in Ms. Martin's FAC is a transparent attempt to silence her and avoid accountability for their heinous actions. The court should see through this ploy and recognize the validity and seriousness of Ms. Martin's claims. The documented evidence speaks for itself, and it is clear that Ms. Martin has been the victim of a calculated and malicious campaign orchestrated by the defendants. The court must allow the full scope of Ms. Martin's experiences to be heard and ensure that justice is served.

The palpable desperation of the defendants to strike and seal Ms. Martin's allegations from the public record is not only a clear admission of their guilt but also a

blatant attempt to avoid accountability for their egregious actions. If Ms. Martin's claims were truly baseless, the defendants would have no reason to fear public scrutiny or judicial examination of the evidence. Their efforts to suppress this information reveal their profound fear of the truth being exposed.

**Irrefutable Evidence:**

Ms. Martin's claims are supported by irrefutable evidence, including physical proof, witness testimonies, and documented incidents. The defendants' assertion that these claims are "conspiracy theories" is a despicable attempt to undermine the gravity of the situation and distract from their own wrongdoing.

**Public and Judicial Accountability:**

The public and the court have a right to see the evidence and understand the full extent of the defendants' actions. By attempting to strike and seal this information, the defendants are trying to manipulate the judicial process and evade the scrutiny they deserve.

**Transparency in Litigation:**

Litigation is about uncovering the truth and seeking justice. The defendants' actions to conceal and suppress the evidence only confirm their culpability and the validity of Ms. Martin's claims. The court must reject their motion and ensure that the full scope of their misconduct is brought to light.

**WHEREFORE**, Plaintiff Ms. Martin respectfully requests that this Honorable Court deny Defendants' motion, restore her FAC to the public docket, and allow her to

correct the defects by amendment and grant her any other relief this Court deems just and proper.

Respectfully submitted,


Brittany E. Martin

Plaintiff

Dated:   July 10, 2024            By:   /s/ Brittany E. Martin

Brittany E. Martin, *in Pro Se*
23 College Ave. SE, APT. 18
Grand Rapids, MI 49503
(616) 822-9423
bmartin0211@outlook.com