## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**BRITTANY E. MARTIN,**

   Plaintiff,

v.

**HENN LESPERANCE PLC,**
a Michigan professional limited-liability corporation,

**KEVIN LESPERANCE,**
in his individual capacity and as Equity Partner/Co-Owner of Henn Lesperance PLC,

**WILLIAM ("BILL") HENN,**
in his individual capacity and as Equity Partner/Co-Owner of Henn Lesperance PLC,

**ANDREW CASCINI,**
in his individual capacity and as Non-Equity Partner of Henn Lesperance PLC,

**MALGORZATA ("GOSIA") WALKER,**
in her individual capacity and as Head of Human Resources/Office Manager of Henn Lesperance PLC,

**THOMAS C. WALKER,**
an individual and as an agent of Henn Lesperance PLC, and

**ROY H. JOHNSON,**
in his individual capacity and as an agent of Henn Lesperance PLC,

   Defendants.

Case No.: 1:24-cv-00072

HON. Hala Y. Jarbou

Magistrate Ray Kent

**PLAINTIFF'S THIRD AMENDED COMPLAINT**

**RELIANCE ON ORIGINAL JURY DEMAND**

## JURISDICTION, VENUE, PARTIES, CONDITIONS PRECEDENT

1. This Court has jurisdiction over Plaintiff's federal claims under 28 U.S.C. § 1331 because they arise under the laws of the United States and supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367(a) because they form part of the same case or controversy. Venue is proper under 28 U.S.C. § 1391(b) because Defendants reside or transact business here and the acts complained of occurred here.

2.      Plaintiff filed a charge of discrimination (471-2023-01588) with the EEOC more than 30 days prior to the institution of this action. Plaintiff was issued a Notice of Right to Sue dated December 14, 2023. This action is brought within 90 days of Plaintiff's receipt of the NRTS.

3.      Plaintiff Ms. Brittany Elaine Martin is a resident of Kent County, MI. She was employed by Defendant HL PLC as a legal assistant/paralegal from Sept. 25, 2019, until her termination on Jan. 26, 2021. At all relevant times, Plaintiff was an "employee" as defined by the FLSA, ADA, Title VII, ELCRA, PWDCRA, and IWOWA.

4.      Plaintiff is a woman and a qualified individual with a disability under the ADA and PWDCRA. She has been diagnosed with ADHD and Recurrent Major Depressive Disorder and received ongoing treatment for both throughout her employment.

5.      Defendants were aware of Plaintiff's actual disability and/or regarded her as having a mental or psychiatric impairment.

6.      Defendant HENN LESPERANCE PLC ("HL PLC" or the "Firm") is a Michigan professional limited liability company with its principal office located at 32 Market Ave SW Suite 400, Grand Rapids, MI 49503. At all relevant times, HL PLC was Plaintiff's "employer" as defined by the FLSA, ADA, Title VII, ELCRA, PWDCRA, and IWOWA, and acted through its officers, agents, and employees.

7.      Defendants KEVIN LESPERANCE and BILL HENN are licensed attorneys and the firm's managing equity partners and co-owners.

8.      Defendant ANDREW CASCINI is a licensed attorney and non-equity partner at HL PLC.

9.      Defendant MALGORZATA ("GOSIA") WALKER served as the firm's Human Resources/Office Manager before, during, and after Plaintiff's employment.

10.    Defendants Kevin Lesperance, Bill Henn, Andrew Cascini, and Gosia Walker were involved in management decisions affecting Plaintiff's employment and qualify as her "employers" under all applicable statutes.

11.    During 2020 and 2021, Defendants KEVIN LESPERANCE and MALGORZATA ("GOSIA") WALKER were carrying on a secret, romantic and sexual extramarital affair—often meeting up offsite, during the workday.

12.    As Kevin Lesperance's mistress, Gosia Walker gained substantial power and influence at HL PLC. Kevin Lesperance became a tool for Gosia Walker to intensify her targeting, undermining, and retaliation against Plaintiff.

13.    Defendant ROY H. JOHNSON is a private investigator who, at all relevant times, acted as an agent of HL PLC.

14.    Defendant THOMAS C. WALKER is a Professor of Political Science at Grand Valley State University and participated in acts relevant to this case.

## FACTUAL ALLEGATIONS

15.    Shortly after Plaintiff began working at HL PLC in 2019, her direct supervisor, Andrew Cascini, acting as an agent of the firm, offered her a non-discretionary annual bonus equal to 11% of the profits allocated to him by the equity partners from the Employment and Labor practice group.

16.    This offer was made in consideration of Plaintiff's substantial contributions to the firm's employment practice, including the revenue and client work she generated in partnership with Cascini.

17.    Plaintiff accepted the offer and performed in reliance upon it, devoting extensive time and labor to building the Employment and Labor group's revenue and managing its casework.

18.    The bonus arrangement was separate from the standard bonus formula applied to other staff, which was based on hours billed and subject to the discretion of the equity partners.

19.     Under the agreed-upon structure, HL PLC's equity partners would allocate a portion of the group's profits to Cascini, and Plaintiff would receive 11% of that amount.

20.     In December 2019, Cascini issued Plaintiff a $600 check, representing a prorated bonus for her partial first year based on the revenue she had helped generate.

21.     Plaintiff fully performed under the terms of the agreement by continuing to drive revenue and manage operations for the firm's employment practice group.

22.     Despite this, Defendants failed to issue any further bonus payments to Plaintiff for subsequent years, breaching the agreement.

23.     Plaintiff relied on the bonus agreement in continuing her employment and investing significant time and effort in the success of the practice group.

24.     Defendants' failure to pay the promised annual bonus for the years following 2019 constituted a material breach of contract.

25.     As a result of Defendants' breach, Plaintiff suffered financial loss and loss of benefit of the bargain.

26.     Defendant Kevin Lesperance, acting within the scope of his employment and authority as managing partner of HL PLC, made numerous false and defamatory statements about Plaintiff to third parties, including:

27.     These statements were false, malicious, and made with actual knowledge of their falsity or reckless disregard for the truth.

28.     Defendant Lesperance's defamatory conduct was ratified by the firm and occurred in coordination with or knowledge of Defendant Gosia Walker. HL PLC took no steps to investigate, discipline, or distance itself from these statements, and continued to employ and entrust Walker and

Lesperance with managerial authority. Plaintiff was not informed of or given any opportunity to address these statements before they were widely circulated, nor were they later retracted.

29.    Plaintiff has a diagnosed psychiatric disability, including ADHD, for which she received ongoing treatment during her employment.

30.    HL PLC had no policy or protocol—formal or informal—for requesting or implementing disability accommodations. As a result, Plaintiff was forced to self-accommodate, having to disclose private information her disability to coworkers and direct reports to explain her needs.

31.    She disclosed her diagnosis and treatment to her direct supervisor, Andrew Cascini, through multiple in-depth conversations, including on October 7, 2020, Plaintiff notified Mr. Cascini in writing that her psychiatrist urged medical leave and outlined her worsening symptoms.

32.    In that same message, Plaintiff made specific accommodation requests, including: (a) flexible scheduling during symptom flare-ups; (b) a quiet work environment away from HR/Office Manager Gosia Walker; and (c) short breaks for symptom regulation. Mr. Cascini said he would respond but never did. No one from management or HR followed up on Plaintiff's October 7 request or discussed alternatives.

33.    Two weeks prior, Plaintiff had also requested temporary partial remote work to manage acute symptoms, which was approved by both Mr. Cascini and Ms. Walker.

34.    At other times during her employment, Plaintiff further sought informal accommodations, including schedule flexibility for therapy and workspace adjustments to mitigate disability-related impacts. Despite awareness of her condition, HL PLC failed to engage in any interactive process or offer accommodations.

35.    Although Plaintiff's September 28, 2020, remote work was unambiguous pre-approved, Ms. Walker deliberately misrepresented her status in a firmwide email as "out," implying she was on leave for the week, followed by Ms. Walker holding a private meeting with firm leadership doubling down on her lie that Plaintiff had taken unauthorized leave, despite her explicit prior approval.

36.    Following her accommodation requests, Plaintiff faced escalating hostility, scrutiny, and mischaracterization by Ms. Walker and Mr. Lesperance.

37.    On October 5, 2020, two days after her approved remote work, Walker retroactively deducted PTO from Plaintiff's balance, citing a 40-hour compliance policy that had never been applied before. Plaintiff complained to Mr. Cascini, who acknowledged the issue but took no corrective action.

38.    Ms. Walker also misrepresented Plaintiff's approved request to switch desks for medical and operational reasons as insubordination, later cited by Defendant Kevin Lesperance as an example of unprofessionalism.

39.    Attempts by Plaintiff to clarify expectations or assert her rights were met with labels of instability or erratic behavior by Walker and at least one partner.

40.    Other employees received flexibility for personal or family reasons without retaliation. Employees such as Gosia Walker, Victoria Zimmerman, Taryn Simmons, Ashleigh Baxter, were granted flexible schedules and remote work without hassle.

41.    Plaintiff, by contrast, was required to justify her requests, forcing her to disclose protected health information and personal matters to Gosia Walker. Plaintiff's requests were either met with deterring behavior: obvious contempt, manipulative passive guilt inducing implications of future consequences, or denied outright.

42.    HL PLC's failure to provide any process for accommodation requests, coupled with the complete failure to accommodate her and retaliatory treatment after her disclosures, created a hostile and discriminatory environment.

43.    Firm leadership and HR had actual knowledge of Plaintiff's disability and protected activity, yet failed to act and participated in adverse decisions against her.

44.    Plaintiff engaged in multiple forms of protected activity, including requesting accommodations and raising workplace concerns.

45.    She also repeatedly reported that the timekeeping system prevented her from accurately recording work performed after hours or remotely. On January 4, 2021, Plaintiff again raised this concern with Mr. Cascini, who acknowledged the issue but took no action.

46.    Three weeks later, on January 26, 2021, Plaintiff was terminated.

47.    Plaintiff's ADA and PWDCRA protected accommodation requests—including schedule flexibility, remote work, and workspace adjustments—were met with PTO revocation, false narratives, and reprimands for pre-approved remote work.

48.    Walker misrepresented Plaintiff's actions to firm partners, falsely claiming she had taken leave without approval and acted unprofessionally—shortly after Plaintiff raised disability concerns.

49.    Plaintiff also reported suspected legal violations, including irregularities in payroll and PPP loan documentation.

50.    In response, Defendants intensified their retaliation: undermining her reputation, revoking benefits, and ultimately terminating her.

51.    During her employment, Plaintiff was subjected to adverse treatment and a hostile work environment on the basis of her sex.

52.    Defendant Gosia Walker, acting with discriminatory intent and in furtherance of her own agenda, manipulated internal processes, fabricated disciplinary narratives, and cultivated animosity toward Plaintiff based on gendered stereotypes and hostility.

53.    Plaintiff's termination was driven in part by stereotyping sex-based animus, including false portrayals of her as emotionally unstable and unprofessional.

54.    Following Plaintiff's termination, Defendants disseminated defamatory statements rooted in gender-based characterizations to justify her firing and diminish her credibility.

55.    Defendant Kevin Lesperance, a managing partner and direct participant in Plaintiff's termination, leveraged his authority to further a narrative that Plaintiff was unstable, falsely accusing her of stalking and interference—conduct he knew to be untrue and driven by ulterior motives.

56.    Defendants failed to take reasonable steps to prevent, investigate, or correct the discriminatory treatment, and did not maintain policies or procedures for addressing sex-based harassment or discrimination.

57.    Defendants' conduct violated Title VII and the ELCRA by discriminating against Plaintiff on the basis of sex and by subjecting her to disparate treatment, a hostile work environment, and termination motivated in part by sex/gender stereotyping animus.

## COUNTS

**Count 1:**  *Violation of the Computer Fraud and Abuse Act* **(against HL PLC, Kevin Lesperance, Bill Henn, Andrew Cascini, Gosia Walker, Roy H. Johnson, Thomas C. Walker)**

58.    Plaintiff incorporates all prior paragraphs.

59.    Beginning no later than December 11, 2021, Defendants HL PLC, Kevin Lesperance, Bill Henn, Gosia Walker, and Roy H. Johnson engaged in unauthorized access to Plaintiff Britt Martin's personal and work electronic devices.

60.     Defendant Gosia Walker, acting within her role as HR/Office Manager, falsely represented that she was performing a necessary update to the firm's TrialWorks case management software and, without Plaintiff's knowledge or consent, installed spyware on Plaintiff's personal laptop.

61.     Between December 11 and December 13, 2021, Defendants remotely accessed Plaintiff's personal laptop, which contained confidential and personal documents related to her employment, legal claims, and private life, exceeding any authorized access.

62.     While Plaintiff was engaged in a telephonic consultation with a certified Digital Forensics Engineer investigating suspected unauthorized access, Defendants executed a remote destructive command that rendered Plaintiff's laptop completely inoperable, erasing years of irreplaceable data and critical evidence.

63.     Defendant Roy H. Johnson, a former FBI agent retained by HL PLC, coordinated these unauthorized electronic surveillance and data destruction efforts, working in concert with other Defendants to impair Plaintiff's ability to pursue legal claims.

64.     As a result of these acts, Plaintiff suffered substantial financial damages, including the cost of replacement hardware and the loss of vital evidence, impairing her capacity to litigate and causing emotional distress.

**Count 2:** *FLSA Violation* **(against HL PLC, Kevin Lesperance, Bill Henn, Andrew Cascini, Gosia Walker)**

65.     Plaintiff incorporates all prior paragraphs.

66.     Plaintiff Brittany Martin was employed full-time as a legal assistant/paralegal by HL Defendants from September 2019 to January 2021. Her position was misclassified as "exempt" from overtime under the FLSA.

67.    Plaintiff's duties were non-exempt: she performed routine legal support work under the direct supervision of attorneys, had no discretion over significant matters, no authority to bind the firm, and followed strict procedures.

68.    Plaintiff's offer letter stated a fixed $45,000 salary for a 40-hour workweek, 8:30 AM–5:00 PM, with a 30-minute lunch. There was no mention of fluctuating hours, exemption status, or the Fluctuating Workweek (FWW) method.

69.    HL Defendants applied the FWW method to Plaintiff's compensation without satisfying its legal prerequisites, including the requirement of a clear mutual understanding or hours that fluctuated. Plaintiff never consented to this method or received any training or disclosure.

70.    Plaintiff routinely worked over 40 hours per week, including nights, weekends, and holidays, without receiving overtime compensation at 1.5x her regular rate. Examples include off-the-clock tasks like delivering documents to FedEx, picking up materials from supervisors' homes, and preparing mailings—all without pay or reimbursement.

71.    Plaintiff used her personal cell phone and laptop to respond to work communications at all hours. Internal firm emails and text records confirm this.

72.    HL Defendants failed to maintain an adequate timekeeping system. Plaintiff could only "clock in" via a desktop at the office. HR Manager Gosia Walker told Plaintiff timekeeping "didn't matter" and that she would be paid the same regardless of hours worked.

73.    On January 4, 2021, Plaintiff notified her supervisor, Andrew Cascini, that she was unable to track her full hours due to the system. He acknowledged the issue but no fix followed.

74.    HL Defendants failed to maintain accurate records of Plaintiff's actual hours worked, including off-site and after-hours work, in violation of 29 U.S.C. § 211(c) and 29 C.F.R. § 516.2.

75.     During Plaintiff's employment, HL PLC was investigated and found in violation of the FLSA by the U.S. Department of Labor. Despite this, Defendants failed to correct their practices and continued to misclassify Plaintiff and similarly situated employees.

76.     HL Defendants' internal policy manual wrongly classified legal assistants as exempt under the administrative exemption, despite established federal guidance that paralegals and legal assistants are generally non-exempt.

77.     Defendants never posted the required notice regarding the employee rights under the FLSA, in violation of 29 C.F.R. § 516.4.

78.     In April 2022, after refusing to sign a separation agreement, Plaintiff discovered that Defendants had retroactively altered her Paychex records to conceal their misclassification and improper payment system.

79.     HL Defendants' conduct was willful. As a law firm with a labor and employment practice, and given their prior DOL investigation, Defendants knew or showed reckless disregard for their obligations under the FLSA.

**Count 3:** *Violation of Michigan IWOWA,* ***(against HL PLC, Kevin Lesperance, Bill Henn, Andrew Cascini, Gosia Walker)***

80.     Plaintiff incorporates all prior paragraphs.

81.     HL Defendants violated the IWOWA by failing to pay Plaintiff 1.5x her regular rate for all hours worked over 40 in a week, in violation of MCL 408.934(1).

82.     HL Defendants also failed to reimburse Plaintiff for necessary business expenses, including gas, mileage, postage, and vehicle wear, as required by IWOWA's wage protections.

83.    Defendants did not post required IWOWA notices or inform Plaintiff of her rights, in violation of MCL 408.937.

84.    HL Defendants failed to maintain accurate daily and weekly records of Plaintiff's hours worked, including off-site labor, in violation of MCL 408.937(1).

85.    Defendants' violations were willful and part of a broader pattern of misclassification and wage suppression, despite their legal expertise and prior DOL findings.

**Count 4:** *Conversion: (against all Defendants)*

86.    Plaintiff incorporates all prior paragraphs.

87.    Among Plaintiff's personal possessions and highly sentimental belongings that Defendants have maintained unauthorized possession of include but are not limited to a desk lamp, ADHD stimming aids, ADHD executive dysfunction visual aids, an XL throw blanket, framed family photos, laminated memorial / obituary of her recently deceased friend, electronic device chargers, phone stand, document stand, mini basketball desktop game, pink salt lamp, desk décor, under desk footrest, office supplies, and various personal documents.

88.    Converting Plaintiffs DNA, handwriting, fingerprints for their own illicit use

**Count 5:** *Invasion of Privacy (against all Defendants)*

89.    Plaintiff incorporates all prior paragraphs.

90.    Defendants invaded Plaintiff's privacy by engaging in unauthorized surveillance, including physical stalking and electronic monitoring.

91.    Defendants monitored Plaintiff's personal communications, movements, and private spaces without consent or legal authority.

92.     Defendant Gosia Walker, using multiple fake social media accounts (including "HannahTreeClimber" and "snow.king.life"), impersonated Plaintiff and disseminated false information and explicit content damaging Plaintiff's reputation.

93.     On or about December 6, 2021, Defendant Gosia Walker created two fake online impersonation accounts using Plaintiff's name and photo, purporting to be Plaintiff and claiming to create and sell pornographic content.

94.     Plaintiff did not authorize or consent to the use of her name or image in this manner. The false impersonation served no legitimate public interest and violated Plaintiff's right to control the commercial or reputational use of her identity.

95.     Defendants appropriated Plaintiff's name, photographs, and likeness without permission for fraudulent and malicious purposes, including for their own benefit, and to harm Plaintiff's personal and professional reputation by falsely associating Plaintiff with adult content platforms.

96.     These intrusions and appropriations caused Plaintiff severe emotional distress, humiliation, and damage to her personal and professional reputation.

**Count 6:** *Violation of Title VII: Sex Discrimination, Hostile Work Environment, Retaliation, and Quid Pro Quo Sexual Harassment* **(against HL PLC, Kevin Lesperance, Bill Henn, Andrew Cascini, Gosia Walker)**

97.     Plaintiff incorporates all prior paragraphs.

98.     Protected class. Plaintiff is a woman and was an employee entitled to protection under Title VII. HL PLC was her employer, and all individual Defendants acted as its agents or had supervisory authority over Plaintiff.

99.    Sex discrimination. Defendants treated Plaintiff less favorably in the terms, conditions, and privileges of her employment because of her sex, including subjecting her to heightened scrutiny, exclusion from opportunities, disparate pay, and ultimately termination.

100.    Sex-based stereotypes. Defendants repeatedly invoked misogynistic stereotypes, including calling Plaintiff "crazy," "unstable," and "criminally insane," to discredit her and justify adverse treatment. These derogatory labels were directly tied to Plaintiff's sex and weaponized to marginalize her voice, her work, and her credibility.

101.    Hostile work environment. Plaintiff was subjected to unwelcome and pervasive sex-based conduct—including verbal harassment, demeaning remarks, gender-based exclusion, and management's tolerance of a culture of sexual favoritism—which created a workplace that was intimidating, abusive, and offensive.

102.    Management knowledge. HL PLC, through its partners and management, had actual or constructive knowledge of the conduct and failed to take prompt or adequate remedial action.

103.    Sexual favoritism and inequality. Defendants fostered a workplace where job benefits were implicitly or explicitly conditioned on sexual involvement with upper management. Female employees who engaged in sexual conduct with partners received promotions, raises, and professional leniency, while Plaintiff—who did not—was denied those same opportunities and treated with hostility.

104.    Quid pro quo. Tangible job benefits were awarded to female employees engaged in sexual relationships with partners. Plaintiff was aware of this discriminatory favoritism, refused to participate, and was harmed professionally as a result.

105.    Retaliation. Plaintiff engaged in protected activity under Title VII by opposing unlawful conduct and raising concerns internally. In response, Defendants escalated their harassment, undermined her reputation, and ultimately terminated her.

106.    Direct evidence. Within 24 hours of Plaintiff's termination, Defendant Kevin Lesperance stated in writing that she was a "crazy person" who "didn't do her job," directly linking her termination to sex-based stereotypes and perceived mental instability. Less than 24 hours later, Defendant Gosia Walker called Plaintiff a "crazy fucking piece of shit" in a contemporaneous text message, further evidencing retaliatory and discriminatory animus.

107.    Failure to post notices. HL PLC failed to post federally required EEOC notices in violation of 42 U.S.C. § 2000e-10(a), depriving Plaintiff of timely awareness of her rights and enforcement channels.

108.    No policy, no training. HL PLC failed to implement anti-harassment policies, reporting procedures, or training programs, creating a workplace where misconduct went unaddressed and retaliation flourished.

109.    Damages. Defendants' conduct was willful and carried out with malice or reckless disregard for Plaintiff's rights. Plaintiff suffered loss of employment, reputational harm, emotional distress, and other damages recoverable under Title VII, including punitive damages.

**Count 7:** *Violation of Michigan ELCRA (Sex Discrimination, Retaliation, Hostile Work Environment, Quid Pro Quo)* **(against HL PLC, Kevin Lesperance, Bill Henn, Andrew Cascini, Gosia Walker)**

110.    Plaintiff incorporates all prior paragraphs.

111.    Protected class. Plaintiff is a woman and was employed by HL PLC, an "employer" under MCL § 37.2201(a). All individual Defendants held supervisory or decision-making authority and acted as agents of HL PLC.

112.    Sex discrimination. Defendants discriminated against Plaintiff based on sex in violation of MCL § 37.2202(1)(a), including unequal pay, adverse treatment, and termination motivated in part by Plaintiff's sex and Defendants' sex-based assumptions.

113.    Stereotyping. Defendants invoked gendered stereotypes—frequently labeling Plaintiff "crazy," "unstable," and "mentally ill"—to justify their actions and malign her credibility. This was a form of sex-based discrimination rooted in archaic stereotypes of women as irrational or emotionally unstable.

114.    Hostile work environment. Plaintiff was subjected to unwelcome, sex-based conduct that was severe and pervasive, including repeated verbal harassment, a culture of sexual favoritism, and exclusion from professional opportunities. The work environment became objectively abusive and interfered with Plaintiff's ability to perform her job.

115.    Failure to act. Defendants knew or should have known about the unlawful conduct and failed to take appropriate action. They either participated in or condoned the behavior.

116.    Sexual favoritism and disparity. HL PLC maintained a workplace culture where sexual involvement with management translated into professional perks—bonuses, raises, leniency, and job security. Plaintiff, who did not engage in such conduct, was denied those opportunities and penalized.

117.    Quid pro quo. Tangible job benefits were awarded to employees who engaged in sexual relationships with firm partners. This practice directly harmed Plaintiff, who was excluded, undermined, and ultimately terminated.

118.    Retaliation. Plaintiff engaged in protected activity under ELCRA by objecting to and opposing discriminatory and retaliatory practices. In response, Defendants intensified their misconduct, culminating in termination and reputational attacks.

119.    Direct evidence. Defendant Kevin Lesperance admitted in writing within 24 hours of Plaintiff's termination that she was a "crazy person who didn't do her job," explicitly tying the termination to a sex-based and disability-coded stereotype. Defendant Gosia Walker also called Plaintiff a "crazy fucking piece of shit" in writing.

120.    Structural failures. HL PLC failed to post ELCRA-required notices, implement anti-discrimination policies, or establish internal complaint procedures, enabling unchecked harassment and retaliation.

121.    No training or enforcement. HL PLC offered no anti-discrimination or sexual harassment training, nor did it take any steps to prevent unlawful conduct or educate employees on reporting options.

122.    Damages. Defendants' conduct was willful and malicious, or showed reckless indifference to Plaintiff's rights under Michigan law. Plaintiff suffered emotional distress, wage loss, reputational harm, and other damages recoverable under ELCRA, including exemplary damages.

**Count 8:** *Negligent Retention and Supervision of Gosia Walker* **(against HL PLC, Kevin Lesperance, Bill Henn)**

123.    Plaintiff incorporates all prior paragraphs.

**Count 9:** *Defamation Slander and Libel (Per Se)* **(against all Defendants)**

124.    Plaintiff incorporates all prior paragraphs.

125.    Defendants HL PLC, Kevin Lesperance, Gosia Walker, and others, acting individually and within the scope of employment, made numerous false, defamatory statements about Plaintiff to third parties.

126.    The statements included accusations of criminal conduct, mental instability, unprofessional behavior, dishonesty, stalking, and workplace misconduct.

127.    These statements were defamatory per se and impugned Plaintiff's integrity, morality, fitness for her profession, and lawfulness.

128.    Defendants made these statements with actual malice or reckless disregard for the truth.

129.    The defamatory statements were not privileged and were communicated to individuals not involved in any internal disciplinary process.

130.    As a direct and proximate result of Defendants' defamation, Plaintiff has suffered reputational injury, severe emotional distress, and economic loss.

**Count 10:** *Breach of Contract: (Bonus Agreement, Raise, Job Security)* **(against HL PLC, Kevin Lesperance, Bill Henn, Andrew Cascini)**

131.    Plaintiff incorporates all prior paragraphs.

132.    Valid agreement. Defendants promised Plaintiff an annual performance-based bonus of 11% in exchange for her work as a litigation paralegal.

133.    Performance. Plaintiff fully performed under the agreement, including contributing substantially to billable hours and firm profits.

134.    Breach. Defendants failed to pay the agreed-upon bonus, despite Plaintiff meeting all qualifying conditions and Defendants accepting the benefit of her performance.

135.    Damages. As a direct result of the breach, Plaintiff suffered financial loss in an amount to be proven at trial.

**Count 11:** *Tortious Interference with Employment Relationship and Attorney–Client Relationship* **(against all Defendants)**

136.    Plaintiff incorporates all prior paragraphs.

137.    Valid contract. Plaintiff had an attorney–client relationship with attorney Todd R. Knecht.

138.    Knowledge. Defendants knew of the relationship as early as April 6, 2021, if not earlier.

139.    Intentional interference. Defendants intentionally and improperly interfered with that relationship by engaging in conduct designed to disrupt legal representation, obstruct access to counsel, and discredit Plaintiff.

140.    Breach caused. Defendants' conduct caused or contributed to Knecht's failure to fulfill his duties under the attorney–client contract.

141.    Plaintiff had a valid employment relationship with HL PLC.

142.    Defendants were aware of Plaintiff's employment relationship with HL PLC.

143.    Defendants intentionally interfered with Plaintiff's employment relationship with HL PLC because Defendants primary purpose was to cause HL PLC to end employment relationship or acted knowing that their conduct was certain or substantially certain to cause HL PLC to end the employment relationship.

144.    Defendants improperly interfered with Plaintiff's employment relationship with HL PLC because they stalked her, framed her for acts and crimes that Thomas C. Walker was committing.

145.    Thomas C. Walker authored and sent a salacious letter and photographs to the wife of Plaintiff's employer, Kevin Lesperance, exposing an affair between Kevin Lesperance and Gosia Walker. The letter was meticulously crafted with specific details with the intent to frame Plaintiff as the author, with the goal of causing Miss Martin's employer to terminate her employment while simultaneously ensuring that the real and tangible prospective business contracts, relationships, and opportunities that were real and tangible to Plaintiff, both in her employment with HL PLC and elsewhere within her career field  were diminished and destroyed.

146.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff suffered significant damages, both economic and non-economic, in an amount to be determined at trial.

**Count 12:** *Disability Discrimination, Failure to Accommodate, Hostile Work Environment, Retaliation, and Interference under the ADA and PWDCRA)* **(against HL PLC, Kevin Lesperance, Bill Henn, Andrew Cascini, and Gosia Walker)**

147.    Plaintiff realleges and incorporates by reference all preceding paragraphs of this Complaint.

148.    At all times relevant, Plaintiff Brittany Martin was a qualified individual with a disability as defined under the ADA and PWDCRA, and/or was regarded by Defendants as having a mental or psychiatric disability, including but not limited to ADHD and Major Depressive Disorder.

149.    Defendants HL PLC and its employees, officers, and agents were aware of Plaintiff's diagnoses, regarded her as disabled, and harbored discriminatory animus and bias toward Plaintiff based on her actual and/or perceived disability.

150.    Plaintiff was able to perform the essential functions of her job with or without reasonable accommodation.

151.    Defendants engaged in a pattern and practice of discriminatory treatment against Plaintiff on the basis of her actual and/or perceived disability in violation of the ADA and PWDCRA, including but not limited to:

152.    Defendants subjected Plaintiff to adverse treatment, differential terms and conditions of employment, and ultimately terminated her based, in whole or in part, on her actual or perceived disability.

153.    Defendants relied on harmful stereotypes and assumptions about Plaintiff's mental health in making employment decisions, including the false belief that Plaintiff was "unstable," "dangerous," "crazy," or "criminally insane."

154.    Defendants treated non-disabled comparators more favorably with respect to discipline, remote work, accommodation, workplace respect, and access to benefits.

155.    33.    Defendants' decision to terminate Plaintiff was substantially motivated by her actual or perceived psychiatric disability.

156.    Plaintiff repeatedly disclosed her disability and requested reasonable accommodations, including but not limited to: occasional remote work, modified work hours, flexible time off for therapy and medical appointments, and a quieter workspace.

157.    Defendants failed or refused to engage in the interactive process as required by law, and instead ignored or dismissed Plaintiff's accommodation requests.

158.    Despite allowing similarly situated non-disabled employees to work from home or utilize flexible schedules, Defendants denied Plaintiff's requests without justification or exploration of alternatives.

159.    Defendants had no policy or practice to facilitate the accommodation process and instead actively discouraged or punished Plaintiff for seeking accommodations.

160.    Plaintiff was subjected to a pervasive and objectively hostile work environment based on her actual and/or perceived disability.

161.    Defendants, including firm leadership and HR, routinely mocked and stigmatized Plaintiff's mental health conditions, referred to her in derogatory terms, and broadcast her private medical information to others in the workplace.

162.    Defendants fostered an environment of humiliation, exclusion, and fear that interfered with Plaintiff's work performance and well-being.

163.    The harassment was severe and pervasive, altered the terms and conditions of Plaintiff's employment, and no other similarly situated employees experienced comparable treatment.

164.    Plaintiff engaged in protected activity under the ADA and PWDCRA by requesting accommodations, disclosing her disability, and opposing discriminatory treatment.

165.    In response, Defendants subjected Plaintiff to escalating hostility, unwarranted discipline, false accusations, deprivation of benefits, reputational damage, and termination.

166.    Defendants' retaliatory actions were causally connected to Plaintiff's protected conduct and violated federal and state anti-retaliation provisions.

167.    Defendants interfered with Plaintiff's rights under the ADA and PWDCRA by creating a culture of fear around requesting accommodations or disclosing disability-related needs.

168.    HR/Office Manager Gosia Walker openly mocked and denigrated other employees' disability-related requests, spread confidential health information, and created an environment where seeking accommodations was punished or ridiculed.

169.    Plaintiff was coerced and intimidated into forgoing accommodations and endured adverse treatment after attempting to assert her rights under the ADA and PWDCRA.

**Count 13:** *(Disability Discrimination – Actual and Regarded-As; Failure to Accommodate; Retaliation; Hostile Work Environment)* ***(against HL PLC, Kevin Lesperance, Bill Henn, Andrew Cascini and Gosia Walker)***

170.    Plaintiff incorporates all prior paragraphs.

171.    Plaintiff was, at all relevant times, a qualified person with a disability as defined by the PWDCRA.

172.    Defendants HL PLC, Kevin Lesperance, Bill Henn, Andrew Cascini and Gosia Walker were "employers" within the meaning of the PWDCRA and subject to its provisions.

173.    Plaintiff's ADHD and Recurrent Major Depressive Disorder substantially limit one or more major life activities and constitute disabilities under the PWDCRA. Alternatively, Defendants regarded Plaintiff as having such disabilities.

174.    Throughout her employment, Plaintiff disclosed her disability and engaged in protected activity under the PWDCRA, including making multiple good faith requests for reasonable accommodation.

175.    Despite actual and constructive knowledge of Plaintiff's disability, Defendants failed and refused to engage in any meaningful interactive process or to provide reasonable accommodations, including requests to work in a quiet location, flex her hours during symptom flare-ups, and work from home during periods of acute distress or heightened job stress.

176.    Defendants discriminated against Plaintiff on the basis of her actual and perceived disability by subjecting her to adverse treatment not experienced by similarly situated employees without disabilities, including: singling her out for scrutiny and verbal reprimands; denying her accommodations regularly granted to other employees; discrediting her use of firm time-off benefits; ridiculing her therapy appointments and mental health needs; and wrongfully terminating her employment.

177.    Defendants subjected Plaintiff to a hostile work environment on the basis of disability. The environment was permeated with discriminatory ridicule, stigma, and harassment—including repeated derogatory comments labeling Plaintiff as "mentally unstable," "crazy," and "criminally insane."

178.    Defendants' conduct created an objectively intimidating, abusive, and hostile work environment that interfered with Plaintiff's ability to perform her job and caused significant emotional distress.

179.    Defendants further retaliated against Plaintiff for engaging in protected activity under the PWDCRA, including requesting accommodation and objecting to discriminatory treatment. The retaliatory conduct included false accusations, stripping of time-off, malicious misrepresentations to upper management, and ultimately termination.

**Count 14:**  *Conspiracy* **(against all Defendants)**

180.    Plaintiff incorporates all prior paragraphs.

181.    Defendants conspired by agreeing, either explicitly or implicitly, to engage in a coordinated conspiracy to harm Plaintiff by collectively engaging in unlawful conduct. Defendants conspired to interfere with Plaintiff's employment, sabotage her legal claims, disseminate defamatory information, invade her privacy, and subject her to discriminatory and retaliatory treatment.

182.    The conspiracy included deliberate acts such as unauthorized surveillance, dissemination of false information, intimidation of witnesses, and interference with attorney-client relationships.

183.    This concerted action was undertaken with a common unlawful objective, resulting in severe harm to Plaintiff, including but not limited to the loss of her legal claims due to statute of limitations issues, the incurrence of additional legal expenses, and severe emotional distress.

**Count 15:**  *Intentional Infliction of Emotional Distress* **(against all Defendants)**

184.    Plaintiff incorporates all prior paragraphs.

185.    Defendants' actions, including repeated harassment, stalking, defamation, invasion of privacy, and sabotage, were intentional or reckless and so outrageous in character as to exceed all bounds of decency tolerated by society.

186.    Defendants' conduct caused Plaintiff to suffer extreme emotional distress, including anxiety, depression, humiliation, and fear for her personal safety.

187.    Defendants' acts were part of an ongoing pattern of cruelty and vindictiveness aimed at punishing Plaintiff for asserting her legal rights and seeking justice.

188.    The severity and maliciousness of Defendants' conduct foreseeably caused Plaintiff's emotional distress, which has been debilitating and protracted.

189.    As a direct and proximate result of Defendants' conduct, Plaintiff has suffered damages including lost wages and other employment benefits, emotional distress, humiliation, pain and suffering, outrage, mental anguish and anxiety and loss of professional reputation, and a loss of capacity for the enjoyment of life.

**Request For Relief:** Plaintiff respectfully requests that the Court enter judgment in her favor and against Defendants, jointly and severally, and award: (a) Declaratory judgment that Defendants violated Plaintiff's rights under federal and state law; (b) Back pay, including lost wages, benefits, and other compensation; (c) Front pay; (d) Compensatory damages for emotional distress, humiliation, and loss of enjoyment of life; (e) Punitive damages; (f) Liquidated damages; (g) Equitable and injunctive relief; (h) Pre- and post-judgment interest; (i) Costs and out-of-pocket expenses; (j) Any other relief the Court deems just and proper.

Dated:   May 21, 2025                              By:   /s/ Brittany E. Martin

**Brittany E. Martin,** *in Pro Se*
23 College Ave. SE, APT. 18
Grand Rapids, MI 49503
(616) 822-9423
bmartin0211@outlook.com