UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**BRITTANY E. MARTIN,**

           Plaintiff,

v.

**HENN LESPERANCE PLC,
KEVIN LESPERANCE,
WILLIAM HENN,
ANDREW CASCINI,
MALGORZATA ("GOSIA") WALKER,
THOMAS C. WALKER, and
ROY H. JOHNSON,**

           Defendants.

Case No.: 1:24-cv-00072

HON. Hala Y. Jarbou
Magistrate Ray Kent

| | |
|---|---|
| **Brittany E. Martin**<br>*Plaintiff* in Pro Se<br>(616) 822-9423<br>23 College Ave. SE, APT. 18<br>Grand Rapids, MI 49503<br>bmartin0211@outlook.com | **Lee T. Silver (P36905)**<br>**Michael L. Gutierrez (P79440)**<br>**Daniel J. Hatch (P79258)**<br>**Tyler A. Burk (P85077)**<br>**BUTZEL LONG, PC**<br>*Attorneys for* Henn Lesperance PLC, Kevin Lesperance, Malgorzata ("Gosia") Walker, Roy H. Johnson, Andrew Cascini, and William Henn<br>300 Ottawa Ave. NW, Suite 620<br>Grand Rapids, Michigan 49503<br>(616) 988-5600<br>silver@butzel.com<br>gutierrez@butzel.com<br>hatchd@butzel.com<br>burkt@butzel.com<br>**Thomas C. Walker**<br>*Defendant* in Pro Se<br>(518) 522-1030<br>2847 Elmwood Drive SE<br>Grand Rapids, Michigan 49506<br>t.c.walker2010@gmail.com |

**ORAL ARGUMENT REQUESTED**

2

# **PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THIRD AMENDED COMPLAINT (ECF NO. 129)**

2

## INTRODUCTION

Defendants' motion should be denied because each claim is sufficiently pleaded or it's deficiencies are plainly curable by amendment.

At a minimum, any question of tolling and accrual is fact-intensive, curable by amendment and inappropriate for resolution on a motion to dismiss. See Forrester v. Clarenceville Sch. Dist., 537 F. Supp. 3d 944, 949 (E.D. Mich. 2021).

The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits. Cf. Maty v. Grasselli Chemical Co., 303 U.S. 197, 58 S.Ct. 507, 82 L.Ed. 745. *Conley v. Gibson*, 355 U.S. 41, 48, 78 S. Ct. 99, 103, 2 L. Ed. 2d 80 (1957),

## PROCEDURAL HISTORY AND POSTURE

First Amended Complaint (ECF No. 17) (322 pages). Filed April 12, 2024 as of right under Rule 15(a)(1)(B). Struck for formatting excess, not legal insufficiency. There was no substantive review on the merits.

The SAC complied but was struck for paragraph numbering; the TAC (ECF 124) again complied with the 25-page cap and exhibits limited to pages of "written instruments," barring charts, screenshots, or digital media, and is now the operative pleading.

## LEGAL STANDARD

Dismissal with prejudice and without leave to amend is only appropriate when it is clear on de novo review that the complaint could not be saved by an amendment. *Newberry v. Silverman*, 789 F.3d 636, 646 (6th Cir. 2015). *Stewart v. IHT Ins. Agency Grp., LLC*, 990 F.3d 455, 457 (6th Cir. 2021)

## PROCEDURAL HISTORY AND POSTURE

### I. The Third Amended Complaint Was Filed Under Court-Imposed Constraints—Not As Plaintiff's Best Effort

Defendants claim this is Plaintiff's "fourth attempt" to plead her case and urge the Court to dismiss with prejudice for failure to cure. That framing is both misleading and legally untenable. The operative Third Amended Complaint (TAC) was not the result of repeated failures under Rule 8—it was the direct product of a Court order that imposed a 25-page limit, despite Plaintiff's explicit objections that such restrictions would make it impossible to fully plead her claims under Iqbal and Twombly. (See ECF Nos. 105, 118.)

Plaintiff's First Amended Complaint—struck at Defendants' request—contained extensively detailed factual allegations and supporting documentation.

By contrast, the Second Amended Complaint (SAC) and Third Amended Complaint (TAC) were both constrained drafts submitted under express judicial mandates. Plaintiff's appeal of the limitations order (ECF No. 118) warned that enforcing such caps would prevent her from presenting a factually sufficient complaint, and Defendants would exploit that procedural posture to argue that she had "four chances" and failed each time. That is exactly what has now occurred.

Plaintiff is in the process of finalizing a comprehensive Fourth Amended Complaint that lifts those limitations and presents the claims in their fully developed form. It does not add new claims or parties but instead provides the clarity and factual support Defendants assert is lacking. Once filed, the Fourth Amended Complaint will supply the proper record for any Rule 12(b)(6) analysis.

Given this context, Defendants' motion should not be evaluated in isolation. The TAC was necessarily pared down to comply with structural restrictions—not because Plaintiff lacked supporting facts or failed to comply with Rule 8.

**LEGAL STANDARD**

II. **STATUTE OF LIMITATONS**

The statute of limitations cannot be used as a sword when the delay was caused by Defendants' misconduct, manipulation, concealment, and post-termination obstruction.

"[A] motion under Rule 12(b)(6), which considers only the allegations in the complaint, is generally an inappropriate vehicle for dismissing a claim based upon the statute of limitations." Cataldo v. United States Steel Corp., 676 F.3d 542, 547 (6th Cir. 2012). "However, dismissal is warranted if the allegations in the complaint affirmatively show that the claim is time-barred." Lutz v. Chesapeake Appalachia, L.L.C., 717 F.3d 459, 464 (6th Cir. 2013) (internal citations and quotations omitted). "Because the statute of limitations is an affirmative defense, the burden is on the defendant to show that the statute of limitations has run." Campbell v. Grand Trunk W. R.R. Co., 238 F.3d 772, 775 (6th Cir. 2001).

Here, Defendants have not affirmatively shown that the claims are fatally time-barred.

## ARGUMENT

### III. STATUTE OF LIMITATIONS AND EQUITABLE TOLLING

- Several of Plaintiff's claims fall within the applicable statutory timeframes.

- Defendants' conduct continued after termination and created new injuries.

- Equitable tolling applies due to concealment, retaliation, and procedural obstruction.

- Defendants created confusion about legal responsibility and repeatedly interfered with Plaintiff's ability to timely assert claims.

- At minimum, the timeliness of certain claims raises factual disputes inappropriate for dismissal.

### IV. Relation Back Henn Cascini

The speed with which a plaintiff moves to amend her complaint or files an amended complaint after obtaining leave to do so has no bearing on whether the amended complaint relates back to the original timely filed complaint; rather, the pertinent question is whether within the 120-day time period for service of process the defendant knew or should have known that it would have been named as a defendant but for an error. Fed.Rules Civ.Proc.Rules 4(m), 15(c), 28 U.S.C.A. *Lindley v. City of Birmingham*, Ala., 515 F. App'x 813 (11th Cir. 2013)

The basics of this type of situation—in which a defendant was misidentified in an initial complaint—were foreseen and addressed by the Federal Rules of Civil Procedure. Generally speaking, an amendment that "adds a new party creates a new cause of action[,] and there is no

relation back to the original filing for purposes of limitations." In re Kent Holland Die Casting & Plating, 928 F.2d 1448, 1449 (6th Cir. 1991). *637 Rule 15(c)(1)(C) of the Federal Rules of Civil Procedure, however, creates an exception whereby a plaintiff may amend his complaint to change the party or the naming of the party against whom a claim is asserted, and that amendment will relate back to the date of the original pleading if: (1) the claim asserted in the amended pleading arises out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading; (2) the added party received notice of the suit within the time period for affecting service under Rule 4(m); (3) the notice was such that the added party will not be prejudiced in maintaining a defense on the merits; and (4) the added party knew or should have known that, but for a mistake of the identity of the proper party, the action would have been brought against him. Fed. R. Civ. P. 15(c); see *Moore v. City of Harriman*, 272 F.3d 769, 774 (6th Cir. 2001). *Clayton v. Hogan*, 753 F. Supp. 3d 629, 636–37 (M.D. Tenn. 2024). Henn and Cascini were obviously put on notice as early as they received Plaintiff's Demand for Litigation Hold in April 2021.

V.   **FLSA and IWOWA**

   A. **Defendants mischaracterize the nature of Plaintiff's claims: Plaintiff sues for unpaid overtime and retaliation; posting/record defects illustrate reckless disregard (supporting willfulness) and equitable tolling—not stand-alone claims.**

Plaintiff does not assert standalone causes of action for Defendants' failure to follow administrative requirements such as notice-posting or recordkeeping. Those facts are pled to support key issues of willfulness, plausibility, and retaliation.

   B. **The TAC Alleges Willfulness Sufficient to Support the Three-Year Window**

Defendants argue that Plaintiff has not pled sufficient facts to establish "willfulness." This is incorrect. Defendants acted willfully and in bad faith:

- Defendants knowingly misclassified her position as exempt under the administrative exemption, despite actual or constructive knowledge that her duties did not qualify.

- Defendants are *licensed attorneys* running a *labor and employment law practice*. They had actual knowledge that legal assistants/paralegals like Plaintiff do not typically meet the administrative exemption under FLSA/IWOWA. Their internal policy manual explicitly stated all legal assistants were exempt. This blanket classification violates binding federal guidance and case law.

- Defendants failed to maintain accurate time records. They instructed Plaintiff not to worry about clocking in/out and made it impossible to record off-site hours. When she raised concerns, HR retroactively docked her PTO to "make up" for under-40-hour weeks, contradicting the fixed-salary classification and undermining the FWW structure.

- Defendants failed to post FLSA/IWOWA notices, depriving Plaintiff and other employees of basic awareness of their rights

- Defendants were investigated by the U.S. Department of Labor in 2020 and found to have violated the FLSA. Plaintiff directly witnessed the firm issuing backpay to affected employees after DOL intervention—evidence of actual notice. Yet Defendants continued unlawful practices.

    - Plaintiff Personally Witnessed DOL-Triggered Backpay: Defendants were investigated by the Department of Labor, which confirmed findings from 2018-2020 violations of wage laws and prompted Defendants to retroactively issue payments to employees in order to avoid formal citation. Plaintiff personally

observed the firm issuing backpay checks to multiple employees, both current and former, after being investigated by the DOL. According to Plaintiff's direct communication with the investigator, the DOL agreed not to issue a formal citation because the firm promptly disbursed unpaid wages after being caught. The firm's decision to pay out back wages rather than contest the allegations underscores both liability and willfulness.

- Defendants literally altered Plaintiff's payroll records after Plaintiff's termination to conceal their violations. **(Exhibits A-G)**

These facts overwhelmingly support an inference of willfulness to trigger the three-year statute of limitations.

### C. Misclassification and Overtime Violations

Plaintiff was misclassified as exempt from overtime under the FLSA's "bona fide administrative exemption" despite performing non-exempt legal assistant/paralegal duties. Her offer letter stated she would work a standard 40-hour workweek and receive a fixed salary. She lacked discretion over matters of significance, worked under close supervision, and performed routine clerical tasks. She had no authority to set policy, bind the firm, manage other employees, or make independent decisions.

Defendants simultaneously used the FWW method to calculate her pay—a structure that legally cannot be applied to misclassified employees. Plaintiff was never told her salary included fluctuating hours or varying overtime rates. Her schedule was fixed (e.g., M-F 8:30 to 5), and she was reprimanded when her clocked hours fell below 40. There was no clear mutual understanding required under 29 C.F.R. § 778.114.

### D. Plaintiff's FLSA claims fall within the three-year limitations period for willful violations and are timely under IWOWA

Plaintiff was terminated on January 26, 2021. She received two post-termination paychecks dated January 29 and February 12, 2021, both of which fall within the three-year statute of limitations under the FLSA for willful violations and IWOWA's three-year statute of limitations.

The January 29 check reflects wages for the January 9–22, 2021 pay period and includes documented overtime compensation, establishing overtime work within the actionable window. Defendants' arguments are gutted by their own payroll records.

### E. Plaintiff Sufficiently Pleads Plausible Claims for Retaliation with Specific Examples of Protected Activity and Adverse Actions that Fall Squarely within Statute of Limitations

This is true for her FLSA, IWOWA, ADA, Title VII, PWDCRA, and ELCRA claims. For example, Plaintiff engaged in protected activity when she voiced concerns to her supervisor, Defendant Cascini, about the firm's discriminatory pay practices, including raising concerns about the firm's timekeeping system and being unpaid for all hours worked just days before her abrupt termination, which supports temporal proximity.

## VI. Plaintiff States a Viable and Timely Appropriation Claim Based on Commercial Exploitation

Defendants wrongly assert that Plaintiff's appropriation claim fails because she lacks a "significant commercial value" in her identity. That misstates the law. A plaintiff need not be a public figure or celebrity to bring a misappropriation claim. The question is whether Defendants used her identity in a commercial context—that is, to promote, sell, or generate value through a false association with the plaintiff.

Here, Plaintiff alleges that Defendant Gosia Walker created two fake accounts—on Instagram and Fansly.com—using Plaintiff's name, photographs, and likeness to impersonate her as a seller of pornographic content. The Instagram account falsely advertised "exclusive content" and linked to the Fansly site, encouraging users to subscribe to view explicit material purportedly featuring Plaintiff. The impersonated account used Plaintiff's exact name, profile photo, and social network to target individuals within her personal and professional circles—deliberately soliciting subscription-based payments and traffic under the guise of Plaintiff's identity. That is precisely what Plaintiff alleges here. Gosia Walker did not merely create parody or fan pages—she orchestrated a scheme to impersonate Plaintiff as a sex worker and profit from paid subscriptions by using her identity. These allegations go well beyond reputational harm—they establish a calculated effort to commercialize Plaintiff's image through fraudulent adult content marketing. That is textbook appropriation and is independently actionable.

### VII. Plaintiff's Conversion Claim is Timely

Defendants' shoot themselves in the foot(note) again in their attempt to frame Plaintiff's conversion claim as untimely.

"In Defendants' first motion to dismiss Plaintiff's complaint, Plaintiff was confronted with an email from the Firm offering Plaintiff a time and place to collect her personal belongings from the Firm *after her termination* (ECF 15, PageID.97)." (ECF No. 130, PageID.2159) (emphasis added). Defendants mischaracterize this "offer" anyway. Subsequent to her termination, including right after her phone call with Defendant Roy H. Johnson, Ms. Martin made multiple requests to Defendant HL PLC for the return of her personal possessions and highly sentimental belongings that remained at her workspace. Ms. Martin requested her personal belongings again in her October 19, 2022, email to Mr. Cascini.

11

VIII. **Plaintiff has pled a plausible and straightforward breach of contract claim.**

Plaintiff alleges that Defendant Cascini promised her an annual bonus equal to 11% of his Employment and Labor group profits in exchange for her contributions. She accepted, performed, and received a prorated bonus in 2019. The promise was clear, non-discretionary, and supported by partial performance. Whether Cascini acted on behalf of the firm or personally is a fact question. The statute of frauds does not bar the claim.

Defendants also argue that Cascini, Henn, and Lesperance cannot be liable as agents. But Plaintiff does not concede that only the firm was party to the agreement. She alleges that Cascini made the offer; whether he did so on behalf of HL PLC, in a dual capacity, or personally, is a fact question not suitable for resolution under Rule 12(b)(6). That issue requires discovery and cannot be decided at the pleading stage.

At minimum, Plaintiff has pled sufficient facts to state a plausible breach of contract claim. The motion should be denied as to Count 10.

IX. **Computer Fraud and Abuse Act**

Plaintiff's CFAA claim is timely and sufficiently pled, curable by amendment with additional factual details. Defendants accessed Plaintiff's personal electronic devices without authorization and caused substantial damage and forced her to incur costs exceeding $5000 in a one-year period. The cost she incurred by having to hire a certified digital forensics company to do a full extraction and investigation into her devices she was $5000 on its own.

## **CONCLUSION**

For the reasons set forth above, Plaintiff respectfully requests this Court deny Defendants' Motion to Dismiss

Respectfully submitted,

Brittany E. Martin
*Plaintiff*

Dated:   June 14, 2025                    By:  /s/ Brittany E. Martin
                                                          **Brittany E. Martin, Plaintiff** *in Pro Se*
23 College Ave. SE, APT. 18
Grand Rapids, MI 49503
(616) 822-9423
bmartin0211@outlook.com