UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRITTANY E. MARTIN,

     Plaintiff,

                                    Case No. 1:24-cv-72

v.

                                    Hon. Hala Y. Jarbou

HENN LESPERANCE PLC, et al.,

     Defendants.

_____/

## **OPINION**

Plaintiff Brittany Martin brings this action against her former employer, law firm Henn Lesperance PLC, several of its partners (Kevin Lesperance, Bill Henn, and Andrew Cascini), the HR manager at the firm (Malgorzata "Gosia" Walker), a private investigator hired by the firm (Roy Johnson), and a professor at Grand Valley State University (Thomas Walker).  She asserts 15 counts under federal and state law.  Her employment ended on January 26, 2021.  She filed her initial complaint in this case on January 26, 2024, exactly three years after her termination.  She then filed several amended versions of the complaint.  Her third amended complaint is the operative pleading.

Defendants filed motions to dismiss the third amended complaint.  On February 4, 2026, the magistrate judge entered a report and recommendation (R&R) that the Court grant Defendants' motions.  The magistrate judge recommends dismissing Plaintiff's federal claims as untimely or for failure to state a claim and declining to exercise supplemental jurisdiction over Plaintiff's state-law claims.  Before the Court are Plaintiff's objections to the R&R (ECF No. 147).

## **I. STANDARD**

Under Rule 72 of the Federal Rules of Civil Procedure,

the district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

Fed. R. Civ. P. 72(b)(3).

## II. ANALYSIS

### A. Plaintiff's Objections

#### 1. Objection I (Background Facts)

Plaintiff first objects to the magistrate judge's characterization of her third amended complaint as her "fourth attempt at a complaint" that Plaintiff, a paralegal, filed "nearly 4 1/2 years after her employment was terminated." (R&R 1 n.1, ECF No. 146.) Plaintiff believes that the magistrate judge has distorted the record; however, the magistrate judge's statements are factually correct. And at any rate, those statements do not impact the outcome recommended by the R&R. Plaintiff suggests that the magistrate judge applied a heightened pleading standard due to her former employment in the legal profession, but she does not point to any example of this in the R&R and the Court discerns none. Accordingly, the first objection is meritless.

#### 2. Objection II (Amendment of Complaint)

Next, Plaintiff argues that the magistrate judge failed to make any recommendation as to whether she should be allowed to amend her complaint under Rule 15 of the Federal Rules of Civil Procedure and whether any such amendment would be futile. The magistrate judge was not obligated to make such a recommendation, however, as Plaintiff never formally sought leave to amend her complaint in response to Defendants' motions to dismiss. She did not move for leave to amend under Rule 15 and she did not submit a proposed amended complaint. *See Mitchell v. City of Benton Harbor*, 137 F.4th 420, 442 (6th Cir. 2025) ("[W]e have refrained from applying this liberal policy of amendment when plaintiffs make only a cursory request for relief and fail to

attach a copy of a proposed amended complaint."); *Kuyat v. BioMimetic Therapeutics, Inc.*, 747 F.3d 435, 444 (6th Cir. 2014) (holding that the district court did not abuse its discretion in denying the plaintiffs leave to amend because they "did not present an adequate motion and because they did not attach a copy of their amended complaint").

### 3. Objection III (CFAA Claim)

Plaintiff objects to the dismissal of her claim under the Computer Fraud and Abuse Act (CFAA).  In support of this claim, Plaintiff alleges that "[b]eginning no later than December 11, 2021," the law firm, as well as Lesperance, Henn, Gosia Walker, and Johnson, "engaged in unauthorized access to Plaintiff['s] personal and work devices."  (3d Am. Compl. ¶ 59, ECF No. 124.)  While Plaintiff was employed by the firm, Gosia Walker allegedly installed spyware on Plaintiff's personal laptop, falsely telling Plaintiff that she was "performing a necessary update to the firm's . . . trial management software."  (*Id.* ¶ 60.)  After Plaintiff's employment ended, Defendants remotely accessed the laptop "[b]etween December 11 and December 13, 2021."  (*Id.* ¶ 61.)  Later, when Plaintiff was investigating this "suspected unauthorized access" with the help of a "certified Digital Forensics Engineer," these Defendants allegedly "executed a remote destructive command that rendered Plaintiff's laptop completely inoperable, erasing years of irreplaceable data and critical evidence."  (*Id.* ¶ 62.)

The magistrate judge determined that this claim is untimely because Plaintiff filed her complaint more than two years after December 2021, when Defendants allegedly accessed her computer.  (R&R 5.)  Plaintiff argues that the magistrate judge ignored the text of the statute of limitations, which provides that "[n]o action may be brought under this subsection unless such action is begun within 2 years of the date of the act complained of *or the date of the discovery of the damage*."  18 U.S.C. § 1030(g) (emphasis added).  Plaintiff argues that the magistrate judge

erred by looking solely at the date of the violation; the R&R does not address whether Plaintiff filed her claim more than two years after the date she discovered the damage.

Plaintiff is correct. The damage Plaintiff alleges is the fact that Defendants rendered her laptop inoperable. The CFAA defines "damage" as "any impairment to the integrity or availability of data, a program, a system, or information." 18 U.S.C. § 1030(e)(8). The CFAA distinguishes between "damage" and "loss." It defines "loss" as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. § 1030(e)(11). The CFAA's statute of limitations specifically refers to "discovery of the damage." Thus, Plaintiff's claim is timely if she filed it within two years after discovering that her laptop was inoperable.

Plaintiff's third amended complaint does not indicate when Defendants allegedly executed the remote command that rendered her laptop inoperable or when she discovered that damage. It is possible that Defendants could have used their remote access to damage Plaintiff's computer within the limitations period. In other words, the Court cannot tell from the face of the complaint whether Plaintiff's CFAA claim is time-barred.

Defendants suggest that it is Plaintiff's burden to plead facts necessary to show that her claims fall within the statute of limitations. On the contrary, the statute of limitations is an affirmative defense. As such, a plaintiff typically "has no obligation under Rule 8 to plead compliance with the statute of limitations." *Michalaki v. LVNV Funding, LLC*, 604 F. App'x 492, 493 (6th Cir. 2015). That obligation arises only "when the court can ascertain from the complaint that the period for bringing the claim has expired." *Reid v. Baker*, 499 F. App'x 520, 526 (6th Cir.

2012).  In other words, "when a plaintiff admits facts in the complaint that establish that the statute has run[,] . . . [t]he burden shifts back to a plaintiff to show that it qualifies for an exception."  *Id.* As to her CFAA claim, Plaintiff has not admitted such facts in this case.  Consequently, the Court cannot dismiss the claim as untimely.

In their motion to dismiss, Defendants also argue that Plaintiff's CFAA claim fails to the extent she alleges unauthorized access to a work device because an employer generally has authorization to access devices that belong to it.  But here, Plaintiff alleges that Defendants accessed her "personal and work devices," including her "personal laptop."  (3d Am. Compl. ¶¶ 59–60.)  Plaintiff's description of her laptop as "personal" and her continued possession of it after her employment suggest that the laptop did not belong to Defendants.  Moreover, the CFAA prohibits both unauthorized access to a computer and *exceeding* authorized access to obtain information from a computer.  *See* 18 U.S.C. § 1030(a)(2).  Plaintiff alleges that Defendants exceeded their authorized access because they obtained access to "confidential and personal documents related to her employment, legal claims and private life."  (3d Am. Compl. ¶ 61.) Accordingly, even if Defendants were authorized to access her laptop, they could have violated the CFAA by exceeding their authorized access.

Defendants also argue that Plaintiff fails to plead sufficient losses to state a claim under the CFAA.  The CFAA permits a private right of action where, among other things, the violation caused "loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value."  18 U.S.C. § 1030(c)(4)(A)(i)(I).  Here, Plaintiff alleges that she obtained the assistance of a digital forensics engineer to investigate the unauthorized access to her computer and that Defendants subsequently rendered her laptop "completely inoperable."  (3d Am. Compl. ¶ 62.)  As part of her damages, she alleges that she incurred the "cost of replacement hardware."  (*Id.* ¶ 64.)

The cost of hiring someone to investigate a CFAA violation and the cost of replacing an inoperable laptop qualify as losses under the CFAA.  And in the aggregate, those losses could plausibly exceed $5,000.  Thus, the Court is not persuaded that it should dismiss the CFAA claim.

In his motion to dismiss, Defendant Thomas Walker argues that Plaintiff does not allege any conduct by him that would give rise to a plausible claim.  Although Plaintiff names Thomas Walker as a defendant to the CFAA claim, she does not allege any facts about him that relate to that claim.  Indeed, the gravamen of her complaint against him is that he sent a letter to the law firm exposing an affair between two individuals at the firm in order to "frame Plaintiff as the author" and terminate her employment.  (3d Am. Compl. ¶ 145.)  Those facts do not give rise to a CFAA claim.  Accordingly, the Court will dismiss Thomas Walker as a defendant to this claim.

### 4. Objection IV (Title VII and ADA Claims)

Plaintiff argues that the magistrate judge erred when concluding that her Title VII and ADA claims were untimely.  The magistrate judge noted that she failed to file these claims with the EEOC within 300 days of her termination date.  (R&R 8–10.)  In fact, she filed them with the EEOC over two years after her employment ended.  (*Id.*)  Plaintiff objects that the Court should consider the "broader course of [Defendants'] discriminatory and retaliatory conduct," as well as "post-termination obstruction and concealment that materially affected accrual and equitable tolling issues."  (Pl.'s Objs., PageID.2308.)  However, she does not elaborate on this assertion.  It is not clear how Defendants could have concealed her claims or prevented her from filing them on a timely basis.  Similarly, when responding to the motion to dismiss, she provided the magistrate judge with no basis for concluding that Defendants prevented her from filing timely claims.  Accordingly, her objection is groundless and the Court will dismiss these claims as untimely.

### 5. Objection V (FLSA Claim)

Plaintiff claims that Defendants violated the FLSA by not paying her the proper overtime rate for hours worked over 40 hours per week. The magistrate judge concluded that Plaintiff's FLSA claim is time-barred and that she failed to state a plausible claim. "Under the FLSA, a lawsuit to recover unpaid compensation must 'be commenced within two years after the cause of action accrued,' unless the cause of action arose 'out of a willful violation,' in which case the lawsuit must 'be commenced within three years after the cause of action accrued.'" *Hughes v. Region VII Area Agency on Aging*, 542 F.3d 169, 187 (6th Cir. 2008) (quoting 29 U.S.C. § 255(a)). "An FLSA cause of action accrues 'at each regular payday immediately following the work period during which the services were rendered for which the wage or overtime compensation is claimed.'" *Frye v. Baptist Mem'l Hosp., Inc.*, 495 F. App'x 669, 675 (6th Cir. 2012) (quoting *Hughes*, 542 F.3d at 187).

Plaintiff's claim does not fall within the two-year statute of limitations. As a general matter, it is reasonable to infer that Plaintiff's payday for her last period of work occurred after her termination date. Indeed, when responding to the motion to dismiss, Plaintiff provided copies of two paychecks that she received after her termination date. (Paychecks, ECF No. 136-4.) But she filed suit three years after her termination date, more than two years after any of her paydays. Consequently, her claim is timely only if she qualifies for the three-year statute of limitations by adequately alleging willfulness. Even then, the claim is timely only to the extent Defendants did not properly compensate her for overtime in the paychecks issued after her termination date because those checks would be the only ones that are within the three-year limitations period.

A violation is willful if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). The Court of Appeals has found a violation to be willful where the employer

7

"had actual notice of the requirements of the FLSA by virtue of earlier violations, his agreement to pay unpaid overtime wages, and his assurance of future compliance with the FLSA." *Walsh v. KDE Equine, LLC*, 56 F.4th 409, 415 (6th Cir. 2022) (quoting *Herman v. Palo Grp. Foster Home, Inc.*, 183 F.3d 468, 473–74 (6th Cir. 1999)).  By contrast, "even if an employer's efforts to comply with the Act were unreasonable (but not reckless or knowingly deficient), a finding of willfulness is unwarranted." *Su v. KDE Equine, LLC*, No. 24-5309, 2024 WL 5199300, at *1 (6th Cir. Dec. 23, 2024).

Plaintiff alleges that she was not exempt from an overtime rate, that she "routinely worked over 40 hours per week," and that Defendants undercompensated her by, among other things, not counting or tracking hours that she worked off-site (e.g., "delivering documents to FedEx, picking up materials from supervisors' homes, and preparing mailings") because the timekeeping system only tracked her hours worked while at the office.  (3d Am. Compl. ¶¶ 70, 72.)

Plaintiff also alleges that Defendants misclassified her as "exempt" from overtime and that they applied the "Fluctuating Workweek (FWW) method" to her compensation "without satisfying its legal prerequisites[]."  (*Id.* ¶¶ 66, 68, 69.)  The FWW method is one manner of "properly comput[ing] overtime compensation based on the regular rate for a *non*exempt employee."  29 C.F.R. § 778.114(a) (emphasis added).  Under that method, "the regular rate of the employee will vary from week to week and is determined by dividing the amount of the salary and any non-excludable additional pay received each workweek by the number of hours worked in the workweek."  *Id.* § 778.114(a)(5).  Once consequence of this method is that the regular rate used for calculating overtime pay decreases as the employee works more hours in a given week.  But an employer can use that method only when there is a "clear and mutual understanding" between the employer and the employee "that the fixed salary is compensation . . . for the total hours

worked each workweek regardless of the number of hours." *Id.* § 778.114(a)(4).  Plaintiff alleges that she did not have such an understanding because Defendants did not make clear to her that her hours would fluctuate or that her salary would compensate her for all the hours she worked in a given week.  (3d Am. Compl. ¶¶ 68–69.)

Defendants and the magistrate judge pointed to a potential conflict in Plaintiff's allegations. On the one hand, she alleges that Defendants misclassified her as an exempt employee who is not entitled to an overtime rate of pay.  On the other hand, she alleges that Defendants relied on the FWW method to compensate Plaintiff, which is an acceptable method for calculating overtime pay for *non*-exempt employees.  Defendants and the magistrate judge construed these allegations as asserting that Defendants classified her "both [as] an exempt employee and a non-exempt employee," and that because Defendants paid her "overtime compensation as a non-exempt employee," she does not state a plausible claim.  (R&R 6.)  In support, the magistrate judge noted that one of the post-termination paychecks provided by Plaintiff "includes overtime pay."  (R&R 7 n.6; *see* 1/29/2021 Paycheck, ECF No. 136-4, PageID.2224.)  In addition, Plaintiff asserted in her response brief that this paycheck "includes documented overtime compensation."  (Pl.'s Resp. Br.  10, ECF No. 136.)

The Court disagrees with the magistrate judge's analysis.  Construing Plaintiff's pro se allegations generously as the Court must, Plaintiff alleges that Defendants did not compensate her for her overtime hours at the rate mandated by the FLSA for two reasons:  (1) they did not track all of her work hours and (2) they used a method that improperly reduced her overtime rate.  For instance, Plaintiff alleges that the system Defendants used to track her hours worked only allowed her to "clock in" while at the office.  (3d Am. Compl. ¶ 72.)  She told her supervisor about this problem and "he acknowledged the issue" but did not fix it.  (*Id.* ¶ 73.)  Also, the firm's HR

manager told Plaintiff that her timekeeping "didn't matter" because "[Plaintiff] would be paid the same regardless of hours worked." (*Id.* ¶ 72.) These allegations do not conflict with her assertions that Defendants applied the FWW method or that they paid her *some* compensation for overtime work. Plaintiff contends that Defendants could not rely on the FWW method due to the lack of a clear and mutual understanding between her and her employer, which means Defendants used the wrong overtime rate. And even if Defendants could rely on that method, application of that method does not rule out Plaintiff's assertion Defendants did not properly compensate her for hours worked over 40 hours per week because Defendants did not account for those hours in her paycheck.

As to willfulness, Plaintiff alleges that Defendants were aware of their legal obligations because her employer was a law firm with a labor and employment practice. Also, during Plaintiff's employment, the Department of Labor (DOL) allegedly found that the firm had been violating the FLSA by misclassifying legal assistants like Plaintiff as exempt from the FLSA, yet the firm continued its practice toward Plaintiff and "similarly situated employees."[1] (*Id.* ¶¶ 75–76.)

Misclassifying Plaintiff as exempt from overtime pay after the DOL found similar conduct by the firm to be a violation of the FLSA could potentially suffice to demonstrate willfulness. *See Walsh*, 56 F.4th at 416. But even if Defendants recognized that Plaintiff was entitled to overtime pay and did not in fact misclassify her as exempt, there are sufficient allegations to support a plausible inference that Defendants acted recklessly. If Defendants maintained a system that was incapable of tracking Plaintiff's off-site work, and if the firm was aware of that system's

---

[1] Defendants dispute Plaintiff's assertion that the DOL found the firm liable for a violation, contending that the Court can rely on public records that the DOL never found such a violation. Defendants provide no support for their assertion, however. They do not point to the public records that would dispute Plaintiff's assertion.

deficiency, a jury could plausibly infer that the firm acted with reckless disregard for whether its conduct was lawful under the FLSA.  *See Elwell v. Univ. Hosps. Home Care Servs.*, 276 F.3d 832, 844 (6th Cir. 2002) ("[A]n employer's recordkeeping practices may . . . corroborate an employee's claims that the employer acted willfully in failing to compensate for overtime.").  Accordingly, Plaintiff has alleged sufficient facts to permit her FLSA claim to proceed under the three-year statute of limitations.  But only her final two paychecks fall within that period.  The rest of her FLSA claim is untimely.

### B. Objection VI (Relation Back)

Plaintiff argues that the magistrate judge erred when concluding that "Plaintiff's claims alleged against Defendants Henn, Cascini, and Thomas Walker do not relate back to the filing of the original complaint" because relation back applies to the amendment of claims or defenses, not to the addition of new parties.  (R&R 2.)  Plaintiff contends that the magistrate judge erred by applying Rule 15(c)(1)(B) of the Federal Rules of Civil Procedure;  she argues that the applicable rule is Rule 15(c)(1)(C).

Plaintiff is mistaken.  The magistrate judge correctly determined that the relation-back rule does not apply to the new parties Plaintiff named in her amended pleadings.  Rule 15(c)(1)(C) provides that an amendment that "*changes* the party . . . against whom a claim is asserted" relates back to the date of the original complaint if, among other things, (1) the new party "received such notice of the action that it will not be prejudiced in defending on the merits" and (2) the new party "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity."  Fed. R. Civ. P 15(c)(1)(C) (emphasis added).  Here, Plaintiff did not "change" a party to the case by substituting one of the original, mistakenly named parties with a different party.  Instead, she added entirely new parties. The Court of Appeals "has repeatedly held that 'an amendment which adds a new party creates a new cause of action and

11

there is no relation back to the original filing for purposes of limitations.'" *Zakora v. Chrisman*, 44 F.4th 452, 480 (6th Cir. 2022) (quoting *Asher v. Unarco Material Handling, Inc.*, 596 F.3d 313, 318 (6th Cir. 2010)).  Thus, the magistrate judge's analysis is sound.

Even if Plaintiff is correct that Rule 15(c)(1)(C) applies, she gave the magistrate judge no reason to believe that she made a mistake concerning the proper party's identity when filing her original complaint, which did not name Henn, Cascini, or Thomas Walker as defendants.  Nor did she attempt to show that these parties received such notice that they would not be prejudiced, or that they knew or should have known that the action would have been brought against them but for Plaintiff's mistake in naming the wrong party. *Cf. Zakora*, 44 F.4th at 482 (finding that relation back rule did not apply where the plaintiff "ma[de] no effort to identify any sort of error, misconception, or misunderstanding as to [the new defendant's] identity before the statute of limitations expired").  Consequently, the Court agrees that Plaintiff's claims against these defendants do not relate back to the date of her original complaint.  As such, the FLSA claim is untimely as to Defendants Henn and Cascini, who were first named in the first amended complaint filed on April 12, 2024, more than three years after issuance of Plaintiff's post-termination paychecks.  The remaining defendants to that claim are the law firm, Lesperance, and Gosia Walker.  (*See* 3d Am. Compl. 9.)

### C. Objection VII (Supplemental Jurisdiction)

Finally, Plaintiff objects to the magistrate judge's recommendation to decline to exercise supplemental jurisdiction over the state-law claims.  The magistrate judge made this recommendation on the assumption that the Court would be dismissing all the federal claims. (R&R 11.)  The Court can decline to exercise supplemental jurisdiction when it has dismissed all claims over which it has original jurisdiction.  28 U.S.C. § 1367(c)(3).  But this Court has concluded that several federal claims should proceed, so that rationale no longer applies.

12

Nevertheless, the Court will decline to exercise supplemental jurisdiction for a different reason.  The Court can decline to exercise supplemental jurisdiction over claims arising under state law when those claims "substantially predominate" over the federal claims.    28 U.S.C. § 1367(c)(2).  A claim can substantially predominate "in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought."  *Kubala v. Smith*, 984 F.3d 1132, 1137 (6th Cir. 2021) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 727 (1966)).  The Court has "broad discretion" in deciding whether to exercise supplemental jurisdiction.    *Musson Theatrical v. Fed. Express Corp.*, 89 F.3d 1244, 1254 (6th Cir. 1996).  The Court "should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity."  *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).

In this case, Plaintiff's remaining federal claims concern improper access to her personal devices on specific occasions as well as failing to properly compensate Plaintiff for her overtime hours in two paychecks Defendants issued to Plaintiff after terminating her.  Plaintiff's state-law claims are more numerous and cover a much wider range of conduct and legal issues.  Those claims include: violations of Michigan wage law because Defendants failed to compensate Plaintiff for overtime hours and for business expenses she incurred; a conversion claim for Defendants' retention of Plaintiff's personal belongings, DNA, handwriting, and fingerprints; invasion of Plaintiff's privacy by allegedly stalking Plaintiff physically and electronically; sex discrimination, retaliation, and harassment under Michigan law; negligent retention and supervision of Plaintiff's co-worker; defamation and libel for false statements Defendants allegedly made about Plaintiff to third parties; breach of contract for failing to pay Plaintiff a performance-based bonus; tortious interference with Plaintiff's relationship with her attorney; disability discrimination under state

13

law; conspiracy to discriminate against Plaintiff, invade her privacy, retaliate against her, and disseminate defamatory information; and intentional infliction of emotional distress for stalking and defaming Plaintiff.  Also, the case is at a relatively early stage of the proceedings and the Court has not opined on any of the state-law claims.  In these circumstances, the relevant factors favor declining to exercise supplemental jurisdiction.  Accordingly, the Court will dismiss the state-law claims.

### III. CONCLUSION

For the reasons stated, the Court will adopt the R&R in part.  The Court adopts the R&R insofar as it concludes that Plaintiff's claims against Henn, Cascini, and Thomas Walker do not relate back to the date of her original complaint.  The Court also adopts the R&R to the extent it recommends dismissal of Plaintiff's claims under Title VII and the ADA.

The Court does not adopt the R&R insofar as it recommends dismissal of Plaintiff's claims under the CFAA and FLSA.  The Court will allow the CFAA claim to proceed, but only against Defendants Henn Lesperance, PLC (the law firm), Henn, Lesperance, Johnson, and Gosia Walker. The Court will dismiss this claim as to Defendant Thomas Walker.  The Court will also allow the FLSA claim to proceed, but only as to Plaintiff's last two paychecks that she received after her termination, and only as to the law firm, Lesperance, and Gosia Walker.  The Court will dismiss the claim as to Defendants Henn and Cascini.

The Court adopts R&R's recommendation to dismiss the state-law claims but does so because those claims substantially predominate over the federal ones, not because the Court has dismissed all federal claims.

The Court will enter an order consistent with this Opinion.


Dated: March 16, 2026                    /s/ Hala Y. Jarbou
                                         HALA Y. JARBOU
                                         CHIEF UNITED STATES DISTRICT JUDGE